MIDWEST NATIONAL BANK AND TRUST COMPANY, Appellant. v. PARKER CORN COMPANY, a Corporation, Respondent.

In the Kansas City Court of Appeals, May 22, 1922.

1. JUDGMENT: Verdict: New Trial: Motion to Arrest Judgment: Defect in Verdict can Only be Taken Advantage of by Motion in Arrest of Judgment. A defect in the verdict cannot be taken advantage of in a motion for a new trial, but only in a motion in arrest of judgment.

2. ———: ———: Motion for New Trial: Motion in Arrest of Judgment: Office of and Difference Between Motion for New Trial and Motion in Arrest of Judgment Stated. The object of a motion for

a new trial is to attack matters *dehors* the record and goes to matters of exception to be preserved by the Bill of Exceptions, while a motion in arrest is to call the court's attention to errors appearing on the face of the record proper, the record proper being the petition, summons, and all subsequent pleadings including the verdict and judgment.

3. NEW TRIAL: Common Law Discretion: Granting New Trial at Term Subsequent to Rendition of Judgment, Held not Exercise of Court's Common-law Discretion to Grant New Trial on Own Motion at Same Term Judgment Rendered. Where a motion for a new trial was sustained at a term subsequent to the rendition of a judgment, the action of the trial court in sustaining the motion cannot be upheld on the ground that it was exercising its common law discretion to grant a new trial upon its own motion at the same term the judgment was rendered.

4. APPEAL AND ERROR: Instructions: Where Peremptory Instruction Given for Plaintiff, Appellate Court, on Appeal, Will Consider Facts in Most Favorable Light to Defendant. Where a peremptory instruction was given in favor of plaintiff, in determining the propriety thereof, the appellate court must necessarily state the facts in their most favorable light to defendant.

5. BANKS AND BANKING: Debtor and Creditor: Bills and Notes: Draft with Bill of Lading Attached Taken by Bank for Collection, Held Insufficient to Establish Relation of Debtor and Creditor and Did not Make Bank Owner of Draft and Bill of Lading. Where bank credited defendant's account with the amount of a draft which, with bill of lading attached, was taken by bank for collection, and permitted defendant to draw checks against it immediately and before collection was made, but it was agreed that in case collection was not made the bank reserved the right to charge back the amount credited, the relationship of debtor and creditor between defendant and the bank was not created, and the bank did not become the owner of the draft and bill lading.

6. ————: Bills and Notes: Bank's Voluntary Agreement to Enforce Collection Against Correspondent Bank upon a Draft Returned Without Being Protested by Correspondent Bank, did not Release Liability of Drawer to Bank. Where a corn broker deposited a draft, with bill of lading attached, in a bank for collection and by agreement between the broker and the bank the draft was credited to broker's account to be charged back if collection was not made, and the bank was not to be liable for the negligence of its collecting agents, though when draft came back a second time as uncollectible, without being protested by the bank's correspondent, the bank voluntarily agreed to enforce collection against its cor-

Midwest Nat. Bank & Trust Co. v. Parker Corn Co.

respondent, *held* the bank was not thereby estopped from demanding payment or recovering amount of draft from broker.

7. ————: In Absence of Instruction to Bank by Drawer of Draft with Bill of Lading Attached for Car of Corn, Bank Held not Liable for Failure to Dispose of Corn. Where a corn broker deposited with a bank for collection, a draft, with bill of lading attached, for a carload of corn, and by agreement broker was permitted to draw checks against it before collection was made and if draft was not paid bank was to recharge the amount to broker, and when draft was returned unpaid, without being protested, broker instructed bank to proceed with its collection, and the fact that draft and bill of lading were not returned to broker for a period of seventeen months was caused by reason of the efforts of the bank to make collection, and although bank agreed to sue correspondent bank for its negligence, there being no agreement by plaintiff, bank, to dispose of or look after the car of corn, it was the duty of broker to give further directions in regard to the car of corn, and in the absence thereof, the plaintiff bank was not liable for failure to pursue any certain course of action with reference to the disposition of the corn.

8. ————: Negligence: Estoppel: Where Drawer Claimed Bank was Negligent in Collecting Draft, Burden was on Him to Show Draft was Collectible, and That Actual Loss Followed Negligent Failure to Collect Draft. In an action by bank against drawer of a draft deposited with bank for collection and which had been credited to his account, but returned unpaid, *held* in view of pleadings, drawer was required to show that the draft was collectible, that the bank was negligent in not collecting it and that actual loss followed.

9. EVIDENCE: Damages: Where Corn Broker Claimed Loss of Car of Corn and There was no Evidence of Value . Thereof or That it Had any Value, There was Nothing to Submit to Jury on Question of Loss or Damage. Where there was no evidence as to the value of a car of corn or that it was of any value, even if bank had been under obligation to care for the same, or to voluntarily and without request from corn broker return bill of lading, there was nothing to submit to the jury on question of loss or damage to the broker.

10. EVIDENCE: Admitting Evidence in Relation to Agreement as to Bank's Liability and Method of Handling Drafts, Held not Error. Where plaintiff relied upon an agreement as to manner of handling drafts and also an agreement that it should not be liable for any default of its collecting agents, the court did not err in admitting evidence in relation to the agreement as to the handling of the drafts.

11. ———: Evidence Held Sufficient to Admit Introduction of Copy of Agreement Without Having Custodian Account for Absence of Original. Where a witness testified that he, and the custodian of a certain agreement, made a diligent search among the files where it was kept but they failed to find it, and bank's president testified that he dictated agreement and that the copy introduced in evidence was compared by him and found to be identical with the original which was left with an employee of the bank, who did not testify, *held* not error to admit in evidence a copy thereof without first having custodian account for absence of original as it was properly accounted for by other testimony.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall* Judge.

REVERSED AND REMANDED (*with directions*).

*Kelly, Buckholz, Kimbrell & O'Donnell* for appellant.

*Kennith W. Tapp* and *H. H. McCluer* for respondent.

BLAND, J.—This is a suit brought in two counts. The first count alleges that plaintiff, a banking corporation of Kansas City, Missouri, entered into an agreement with defendant, when it became a depository of the latter, providing that defendant should draw and deposit bills of exchange in the form of drafts payable to defendant's (plaintiff's) order; that plaintiff agreed to accept such drafts for collection and when the drafts were deposited plaintiff should give defendant credit for the amount of such drafts as though they were cash; that defendant should be permitted to issue checks against the amount so credited; that if any such drafts were not paid by the drawee defendant would reimburse plaintiff and the amount of the draft should be charged back to the defendant with interest; "that such agreement became the usual course of dealing between plaintiff and defendant;" that on February 27, 1918, defendant deposited with plaintiff a draft in the sum of $1290.90, addressed to Beckwith & Inglis, payable to the order of

plaintiff on demand; that plaintiff gave credit on its books to defendant for said sum; that plaintiff endorsed the draft and forwarded it together with the bill of lading attached thereto to the First National Bank of Wyoming, Iowa, for presentation and collection from said Beckwith & Inglis; that defendant thereafter deposited checks with plaintiff against the amount of said draft; that plaintiff paid said checks so that the said sum of $1290.90 was received by the defendant ''or by others at its direction and for its use and benefit;'' that the First National Bank of Wyoming failed to collect from Beckwith & Inglis; that when the draft was returned unpaid defendant refused to pay the same; that said draft had never been paid either by the drawee or by defendant; that although plaintiff notified defendant of the failure to collect the draft, defendant refused to pay the amount. The first count of the petition prays judgment for $1290.90 with interest at six per cent from February 27, 1918.

The second count alleges that—

''.  .  . on the 27th day of February, 1918, the plaintiff mistakenly believing that defendant 'had funds to his credit with plaintiff to pay the same, honored checks drawn by the defendant and duly presented to it by the defendant or by persons at its order aggregating twelve hundred ninety dollars and ninety cents ($1290.90).

That on said date the defendant did not have money on deposit with the plaintiff sufficient to cover the payment of the amount of the checks presented for payment, and by reason thereof the plaintiff has paid either to the defendant or for its use and benefit, the sum of twelve hundred ninety dollars, and ninety cents ($1290.90), and that by reason thereof the said sum of twelve hundred ninety dollars and ninety cents ($1290.90), is now due from the defenant to the plaintiff, and that payment was demanded from the defendant on or about the 27th day of February, 1918, said defendant failed to pay and still refuses to pay said sum.

Wherefore, plaintiff prays judgment for said sum of twelve hundred ninety dollars and ninety cents ($1290.90), with interest from the 27th day of February, 1918, and costs of suit.''

In its answer to the first count of the petition defendant generally denies the allegations of the petition and alleges that upon the deposit of the draft mentioned in the petition defendant was given credit for the full amount thereof with the privilege of checking against the proceeds thereof and defendant did check against said proceeds and ''that by reason thereof plaintiff became and was the purchaser and owner of said draft with the security or collateral thereto attached;'' that the draft on presentation to the drawee was not paid and was not protested and no notice of non-payment was given defendant ''by reason thereof this defendant was absolutely released.'' Defendant further alleged—''. . that plaintiff negligently failed to look after or take any care of the bill of lading and the corn represented thereby, but permitted the corn covered by said bill of lading to be absolutely lost, to the damage of this defendant in the sum of the amount of said draft, and by reason thereof plaintiff is estopped from demanding payment from defendant.''

Defendant then alleges that when the draft was returned not protested that plaintiff told defendant that it would hold liable the First National Bank of Wyoming, Iowa, for failure to protest said draft and would collect the same from that bank; that plaintiff retained the draft and bill of lading for that purpose but failed to give defendant any notice for more than seventeen months after the draft had not been paid or that plaintiff would look to defendant for payment; that in the meantime the plaintiff had permitted the car of corn to become completely lost so that defendant obtained no benefit therefrom ''and by reason thereof plaintiff is estopped from demanding payment from defendant.'' The answer further alleges—

''That had said bill of lading been returned to this defendant, that this defendant could and would have

realized therefrom sufficient to cover the amount of said draft, and that if plaintiff had properly looked after said corn represented by said bill of lading and properly cared for the same, that it could have realized sufficient therefrom to have satisfied said draft, but that plaintiff negligently failed to give the car of corn covered by said bill of lading any care whatever, and never at any time notified this defendant that said corn was not receiving proper care, and that defendant did not know said corn was not receiving proper care, but believed it was being properly looked after by plaintiff herein.''

The answer to the second count of the petition consisted of a general denial. The reply consisted of a general denial.

At the close of all of the evidence the court instructed the jury to find for plaintiff, resulting in a general verdict in favor of plaintiff in the sum of $1524.53. One of the grounds for a new trial assigned in the motion for a new trial was ''that the verdict was a general verdict for plaintiff while the petition was in two counts and the verdict should have been on each count separately.'' Afterwards the court sustained defendant's motion for a new trial, citing as a reason therefor ''that there was no finding on the second count of plaintiff's petition.''

Plaintiff insists that the court erred in sustaining the motion for a new trial on the ground assigned. We think plaintiff is correct in this. A defect in the verdict cannot be taken advantage of in a motion for a new trial but only in a motion in arrest of judgment. The object of a motion for a new trial is to attack matters *dehors* the record. In other words, it goes to matters of exception to be preserved by the Bill of Exceptions, while a motion in arrest is to call the court's attention to errors appearing on the face of the record proper. [Stid v. Railroad, 211 Mo. 411, 414, 415; Howell v. Jackson County, 262 Mo. 403.] The record proper consists of the petition, summons, all subsequent pleadings including the *verdict* and judgment. [Bateson v. Clark, 37

Mo. 31, 34; Fence Co. v. Brooks, 126 Mo. App. 495.] Under these authorities the matter of defect in the verdict could not be raised in a motion for a new trial but only in a motion in arrest. The motion for a new trial was sustained at a term subsequent to the rendition of the judgment, therefore the action of the trial court in sustaining the motion cannot be upheld on the ground that he was exercising his common-law discretion to grant a new trial upon his own motion at the same term the judgment was rendered. [Gray v. Lumber and Mining Co., 177 S. W. 595, 596.]

However, defendant contends that the action of the trial court in granting a new trial was proper in that it could and should have granted the new trial upon other grounds set forth in the motion for a new trial. In this connection defendant insists that the court erred in giving the peremptory instruction in favor of plaintiff. In the light of this contention it is necessary to state the facts in their most favorable light to defendant.

The evidence shows that by agreement and course of dealing between the parties defendant would deposit with plaintiff for collection drafts payable to plaintiff's order, including the draft in controversy, and that plaintiff would immediately give defendant credit for the amount of the draft and allow defendant to at once check against the deposit. It was further agreed that the bank should receive a collection fee of ten per cent per one hundred dollars on each draft, and in addition thereto interest on the draft during the time that should elapse between their deposit with the bank and the time the bank received the money therefrom. If the draft was dishonored it was to be protested and the defendant notified and upon its return to defendant it would reimburse plaintiff. Plaintiff handled on an average of ten such drafts per day for defendant. On February 6, 1918, this agreement was somewhat modified as will hereinafter appear.

The facts further show that in the early part of 1918 defendant sold a car of corn to one Livingston at Center

Junction, Iowa, and that Livingston resold the corn to one Norris at this place. The car of corn was shipped by defendant to Center Junction, Iowa, and a draft was drawn by defendant upon Norris at that point, payable to plaintiff, for the purchase price of the corn; that a shipper's order bill of lading was attached thereto endorsed in blank by the defendant; that the draft and bill of lading were forwarded by plaintiff to defendant's correspondent in the usual way but that the draft was dishonored and the corn not accepted by Norris. This draft was dated February 4, 1918. The car of corn arrived at Center Junction, Iowa, on February 11 and on February 27 defendant sold it to Beckwith & Inglis at Wyoming, Iowa. This corn was to be merchantable, cool and sweet ear corn. Defendant followed the usual custom, drawing its draft in favor of plaintiff, addressed to Beckwith & Inglis at Wyoming, Iowa, in the sum of $1290.90 to cover the purchase price of the corn. Attached to this draft was a shipper's order bill of lading endorsed in blank by the defendant. Plaintiff endorsed the draft and forwarded it and bill of lading to the First National Bank of Wyoming, Iowa, for collection from Beckwith & Inglis. The Iowa bank attempted to make collection but the draft was dishonored and returned to plaintiff bank at Kansas City. Thereafter it was again sent to the bank at Wyoming and again returned to the bank at Kansas City, without protest of the draft being made by the bank of Wyoming. Beckwith & Inglis dishonored the draft on account of their refusal to take the corn. This refusal was because the car was originally billed to someone else at Center Junction and had been refused and Beckwith & Inglis did not know of this fact which was concealed from them by the defendant; that Beckwith & Inglis had the car inspected and found that it was not merchantable corn.

On the return of the draft to plaintiff the second time defendant was notified and the president of plaintiff and the president of defendant had a conversation in relation to the matter. Defendant's president tes-

tified that the president of the bank told him that the draft had come back the second time unpaid and that the witness suggested to the latter that the bank insist that the draft be paid. The president of the bank *"suggested"* that in order to obtain payment the bank would have its attorney, Mr. Downey, "proceed to undertake to force collection," and insist that the First National Bank of Wyoming, Iowa, should pay the draft on account of the fact that they had failed to protest it when dishonored; that the draft should have been paid on demand. Defendant's president then said, "that was perfectly proper, and for him to proceed to do so." Later the attorney for the bank called at defendant's office and gave witness an outline of his course of action saying that he was going to press collection against the bank at Wyoming, and defendant turned over to him all of its files in reference to the matter.

Defendant's president testified that the draft was not returned to it until about a year and a-half after it had been first deposited with plaintiff; nor until this time was the amount of the draft ever debited to defendant's account nor request made of defendant to take up the draft. Mr. Downey, attorney for the bank, testified that he corresponded with the Wyoming bank and attempted to make collection from it but failed; that he then took up the matter with Beckwith & Inglis but was unable to make collection from them. Then upon defendant's suggestion he attempted to sell the corn to Livingston at Center Junction, Iowa, but Livingston refused to bid upon the same; that he got information through defendant's office that the car of corn was being moved and he thought that it was sent to Savanna, Illinois; that he reported to the defendant "the result of my endeavors." Defendant's president testified that Downey had never returned defendant's files; that he did not remember whether or not Downey reported to him that he was unable to make collection on the draft. Plaintiff's president testified that a number of drafts drawn by defendant had been returned from country

banks without protest being made and that on February 6, 1918, he had defendant's president sign the following agreement:

"February 6, 1918.

Midwest National Bank,
 Kansas City, Mo.
Gentlemen:

 Referring to drafts and other items deposited with you heretofore or hereafter, it is of course understood that you are not liable for the neglect or default of any collecting agent or for delay or loss in the mails.

Very truly yours,<br>
Signed, Parker, Corn Co.<br>
J. F. Parker, Pt. (O. K. P)"

Defendant's president testified that he did not remember whether or not he signed this writing. The evidence is undisputed that the corn was not merchantable but there is no evidence as to what was its value, if any.

Defendant insists that by reason of the course of dealing between the parties plaintiff became the owner of the draft and bill of lading attached at the time they were turned over to the bank; that plaintiff did not have a right to be reimbursed from defendant on account of the fact that it failed to return the bill of lading to defendant; that it was the duty of plaintiff to use diligence to protect defendant from unnecessary loss, even to the extent of bringing suit upon the draft against the parties liable thereon, but instead of doing this it permitted the car of corn to be lost to defendant; that when plaintiff sought to collect the draft from the First National Bank of Wyoming, Iowa, plaintiff released defendant.

We do not think that under the facts in this case plaintiff became at any time the owner of the draft and bill of lading. The draft was taken by plaintiff for collection. The fact that it credited defendant's account with the amount of the draft and permitted defendant to draw checks against it immediately and be-

fore collection was made, would not create the relation of debtor and creditor between defendant and the bank. It was agreed if collection was not made the amount of the draft should be charged back. Under such circumstances the bank treats the deposit as merely provisional and in case collection is not made the bank reserves the right to charge back the amount credited. [3 R. C. L. 522, 523; Midland National Bank of Brightwell, 148 Mo. 358; Brigance v. Bank of Cooter, 200 S. W. 668] The case of Dymock v. Bank, 67 Mo. App. 97, cited by the defendant, is not in point. In that case there was an antecedent debt owing to the bank by the depositor and the drafts, upon being deposited by the latter, were treated as cash and used by the bank to discharge the debt *pro tanto*. No such facts appear in this case. It is therefore apparent that the bank was merely handling these drafts for collection and the relation of debtor and creditor did not arise.

When the draft came back the second time unpaid and plaintiff notified defendant, plaintiff had done all that it was required to do. The evidence shows that at that time the draft was uncollectible. When plaintiff voluntarily agreed to enforce collection against the bank it did not release defendant but merely agreed to make further effort to collect the draft for the defendant. Although the bank suggested what method should be used in attempting to make collection upon the draft, that is, that an attempt be made to hold the Iowa bank, defendant's president assented to this course of procedure and the conversation had between the two amounted merely to a direction by the defendant to plaintiff as to how to proceed with the matter. A different holding might possibly be made were it not 'for the agreement in writing signed by the defendant on February 6, 1918, wherein defendant agreed that plaintiff should not be liable for the negligence of plaintiff's collecting agents. Were it not for this writing the jury possibly could infer that plaintiff in agreeing to make collection from the Iowa bank recognized its liability to defendant for

the negligence of the Iowa bank in failing to protest the draft and assumed responsibility thereon. But, as before stated, plaintiff had an agreement with defendant that the former should not be liable for the negligence of the Iowa bank. There being no duty upon plaintiff to make any further effort to make collection, the jury could not find that there was unless upon some ground of estoppel arising by reason of the fact that plaintiff agreed to sue the Iowa bank.

In this connection we are assuming that when plaintiff's president suggested that it would "'force payment" from the Iowa bank he meant that plaintiff would bring suit if necessary. Of course it is difficult to understand why plaintiff, after it had done all that it was required to do, should agree to sue the Iowa bank, and plaintiff's evidence shows that it did not do so as it was contrary to the policy and practice of plaintiff to bring suit; that it had nothing further to do with the matter; that defendant and not plaintiff employed Downey to proceed further with it. However, this conflict in the evidence was for the jury and we assume that plaintiff did agree to sue the Iowa bank. Assuming that on some principle of estoppel plaintiff under the facts was required to bring suit against the Iowa bank, does its failure to do so show liability to defendant? Does not defendant in order to show such liability have to establish the fact that it was damaged by reason of such failure? This matter will be discussed later.

The fact that the draft and bill of lading were not at once returned to the defendant was caused by reason of the fact that the attorney for the bank was attempting to make collection upon the same. However, the evidence shows that his efforts ceased some time prior to the return of the draft and bill of lading to the defendant. Downey notified defendant that he could not make collection. At that time he had not brought suit against the Iowa bank and defendant must have known this. Although plaintiff agreed to sue the Iowa bank there is not a particle of evidence that it agreed to dispose of or

look after the car of corn and no evidence that defendant instructed it to do so. There was evidence that defendant instructed Downey to try to sell the car to Livingston and Downey attempted to do this but there is not a particle of evidence that Downey or plaintiff was given any further directions in relation to the car of corn. It was the duty of defendant to at least give further instructions in regard to the car of corn as the bank, acting through its attorney Downey, was merely the agent of the defendant and plaintiff would not be liable for failure to pursue any certain course of action at that time in the absence of instruction by defendant (Benton v. Craig, 2 Mo. 197), if plaintiff could be held liable at all under the facts.

We think the affirmative matter pleaded in defendant's answer was not proved. As to the matters pleaded the evidence shows that prior to the transaction had between the parties and out of which this suit arose, there was an agreement between plaintiff and defendant that plaintiff should not be liable for the neglect or default of any collecting agent, therefore, there could be no liability on the part of plaintiff for the failure of the Wyoming bank to protest the draft. In addition to this, the evidence fails to show that defendant suffered any damage by reason of this failure nor is there any evidence to show that defendant was damaged by reason of the second matter pleaded in the answer, that is, that plaintiff permitted the corn to be lost. We have also covered this defense supra, wherein we held that there was no duty upon plaintiff to dispose of the car of corn under the circumstances. The answer admits facts which show that defendant was not damaged by reason of the failure to protest the draft, for it says in effect that after failing to protest if the bill of lading had been returned defendant would have realized enough to cover the amount of the draft and if plaintiff had properly looked after the corn it could have realized enough to have satisfied the draft.

In view of the pleadings in this case it was incumbent upon the defendant to show that the draft was collectible; that the bank was negligent in not collecting it and that actual loss followed. [7 C. J. 622; Hendricks v. Jefferson County Savings Bank, 153 Ala. 636; Hilsinger v. Trickett, 86 Ohio State 286, 303; Sahlien v. Bank, 90 Tenn. 221; Morris-Miller Co. v. Van Pressentin, 63 Washington 74.] Assuming that the bank was negligent in not collecting the draft and that it should have brought suit against the Wyoming bank, there is no evidence that defendant lost anything by reason of such alleged negligence on the part of plaintiff. There is no evidence that the draft was collectible against Beckwith & Inglis; to the contrary it was shown that it was not. The suit was to be brought against the Iowa bank on the ground that it failed to protest the draft. In order to show that defendant was damaged by the failure of the plaintiff to bring the suit, it must have shown that the suit would have been effective had one been brought. Evidently the suit would have failed for even had the draft been protested defendants could not have collected it. The evidence shows this. Therefore it was not damaged on account of the fact that the draft was not protested. Even had plaintiff been under the obligation to care for the car of corn or to voluntarily or without request from defendant return to it the bill of lading, there is no evidence as to the value of the corn or that it was of any value. There was nothing to submit to the jury on the question of loss or damage to the defendant. [Selz v. Collins, 55 Mo. App. 55, 57.]

It is insisted that the court erred in admitting evidence in relation to the agreement as to the handling of the drafts. We fail to see any error in connection with this matter. The only reason given as to why the evidence was erroneously admitted is that "plaintiff relied on its written agreement," the agreement of February 6, 1918. Plaintiff was not relying entirely upon the writing of February 6, 1918, wherein defendant agreed that plaintiff should not be liable for any default

on the part of plaintiff's collecting agents, but was relying on both agreements. It could not well have relied alone upon the agreement of February 6, 1918, for the agreement by itself would not have made a case for plaintiff.

It is contended that the court erred in admitting in evidence the agreement of February 6th. Plaintiff's president testified that he dictated this agreement and that the copy introduced in evidence was compared by him and found to be identical with the original; that the original was left with an employee of the bank who did not testify; that it was kept in a certain file in the bank. In view of the fact that the custodian of the original was not called to testify, defendant contends that it was not accounted for and that there was not sufficient basis for the introduction of the copy. However, Mr. Downey, who was in the general employ of the bank, testified that he and the custodian of the paper made a diligent search among the files where it was kept but they failed to find the same. Under such circumstances we do not think it is necessary for plaintiff to have brought the custodian of the paper into court as the absence of the original was properly accounted for by Mr. Downey's testimony. In this connection it will be remembered that defendant's president, who, according to the evidence, signed the writing, refused to testify that he did not sign it. This evidence was, therefore, uncontradicted.

The judgment is reversed and the cause remanded with directions to the trial court to reinstate the verdict and judgment. All concur.