OPAL NEWDIGER v. KANSAS CITY, Appellant, KANSAS CITY PUBLIC
SERVICE COMPANY, a Corporation, Defendant.—114 S. W. (2d)
1047.

Division One, April 1, 1938.

*George Kingsley, Francis L. Roach* and *Marcy K. Brown, Jr.,*
for Kansas City.

*Charno & Drummond* for respondent.

254

BRADLEY, C.—This is an action for personal injury. Plaintiff brought suit against Kansas City and Kansas City Public Service Company. At the close of plaintiff's case the court marked "given" what we may term a demurrer to the evidence, offered on the part of the Kansas City Public Service Company. Defendant, Kansas City, excepted to the giving of this peremptory direction to find for the service company. Plaintiff did not at any time dismiss or take a nonsuit as to the service company, but, when the peremptory direction was marked given, the service company withdrew from the trial. The peremptory direction to find for the service company was not submitted to the jury, but the cause proceeded and at its close was submitted to the jury on instructions given for plaintiff and defendant Kansas City. The jury returned

this verdict: "We, the jury, find the issues for the plaintiff and do assess her damages at five thousand dollars ($5,000.00)."

Defendant, Kansas City, duly filed motion for new trial and motion in arrest, both of which were overruled, and appeal was taken to the Kansas City Court of Appeals, which court reversed the judgment and remanded the cause (Newdiger v. Kansas City et al., 106 S. W. (2d) 51) on the ground that the trial court erred in overruling the motion in arrest, but certified the cause to this court on the theory that the ruling reached was in conflict with the ruling by the St. Louis Court of Appeals in State ex rel. Witte Hdw. Co. v. McElhinney, 100 S. W. (2d) 36. The cause having been certified to the Supreme Court in accordance with the Constitution, Amendment of 1884, Section 6, it is here the same as if it had come by appeal from the trial court. [Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 104 S. W. (2d) 379; Berry v. Equitable Fire & Marine Ins. Co., 317 Mo. 1119, 298 S. W. 63, 1. c. 66.]

Error is assigned (1) on overruling the motion in arrest; (2) on refusing a peremptory direction for a directed verdict in favor of appellant at the close of the whole case; (3) on the admission and exclusion of evidence; (4) on sustaining the public service company's demurrer to the evidence at the close of plaintiff's case; (5) on refusing to grant a new trial on the alleged ground that plaintiff "committed willful perjury;" and (6) on alleged interference with the cross-examination of witnesses.

Did the court commit error in overruling the motion in arrest? The full assignment on overruling the motion in arrest is: "The court erred in overruling appellant's motion in arrest of judgment, because the verdict is void, incomplete, does not dispose of the parties or issues, and is insufficient to sustain the judgment." Without setting out the motion, we think it sufficient to say that the grounds included in the assignment are embraced within the motion.

The verdict was returned on November 22, 1935, and on same day, judgment on the verdict was entered, reciting as follows: "Now on this day comes again the same parties herein and comes also the jury and the hearing of evidence is again resumed and at the close of the plaintiff's evidence defendant, Kansas City Public Service Company, offers a peremptory instruction in the nature of a demurrer to plaintiff's evidence which the court marks 'given' and to which action and ruling of the court plaintiff excepts. And after hearing remainder of the evidence, the reading of the instructions of the court and arguments of counsel for the respective parties, said jury having retired to the jury room to deliberate upon said verdict and after due deliberation, said jury returned into court the following verdict, to-wit   (Here follows verdict):

"Wherefore, it is ordered and adjudged by the court that plaintiff have and recover of and from defendant Kansas City, the said sum of five thousand ($5,000.00) dollars, together with the costs of this cause and have thereof execution.

"It is further ordered and adjudged by the court that this cause be and the same is hereby dismissed as to said defendant Kansas City Public Service Company, and that it. go hence hereof without day and recover of plaintiff its costs and have thereof execution."

We might here explain the situation in the case of State ex rel. Witte Hdw. Co. v. McElhinney, the case on which the Court of Appeals based its certification of the present case to this court. The Witte Hardware Company had a cause against someone (not named in the opinion) on a promissory note in Judge McElhinney's court (circuit court, St. Louis). At the close of the case the court gave a peremptory direction to the jury to find "in favor of the plaintiff and against the defendant in the amount of $440.00 and interest since September 5, 1935." The jury retired, and later returned "and informed the court of their refusal to bring in the verdict required of them by the instruction. Thereupon, over objection and exception of plaintiff, the court declared a mistrial and continued the case. Thereafter, plaintiff hardware company (in same term) filed motion (stating the facts) asking "the court to enter up a judgment" in favor of plaintiff in the sum of $470.80, which amount included interest. This motion was overruled. Thereupon the plaintiff sought mandamus in the St. Louis Court of Appeals to compel Judge McElhinney "to enter up a judgment for plaintiff" as asked in the motion. The Court of Appeals ruled that "under such circumstances the full and proper exercise of respondent's jurisdiction required that he bring the case to a conclusion by causing a final judgment to be entered from which defendant might appeal if aggrieved." The alternative writ. of mandamus was made peremptory.

To support the contention in the present case that the motion in arrest should have been sustained, appellant cites: Sec. 1077, R. S. 1929, Mo. Stat. Ann., sec. 1077, p. 1376; Singleton v. Kansas City Baseball & Exhibition Co., 172 Mo. App. 299, l. c. 306, 157 S. W. 964; Spangler-Bowers v. Benton et al., 229 Mo. App. 919, l. c. 927, 83 S. W. (2d) 170; Hughey v. Eyssell, 167 Mo. App. 563, 152 S. W. 434; Midwest Natl. Bank & Trust Co. v. Parker Corn Co., 211 Mo. App. 413, l. c. 419, 245 S. W. 217; Lindsey v. Nagel, 157 Mo. App. 128, l. c. 138, 137 S. W. 912; Boudreau v. Myers (Mo. App.), 54 S. W. (2d) 998, l. c. 999; Dailey v. City of. Columbia, 122 Mo. App. 21, l. c. 24, 97 S. W. 954; Winkelman v. Maddox, 119 Mo. App. 658, l. c. 662, 663, 95 S. W. 308; Crow v. Crow,

124 Mo. App. 120, l. c. 125, 100 S. W. 1123; Proctor v. Garman et al., 203 Mo. App. 106, l. c. 108, 218 S. W. 910.

Most all the cases involving a question similar to the question here have concerned (whether mentioned or not) Section 1077, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1077, p. 1376), which provides, among other things, that "only one final judgment shall be given" in a case, and Section 3268, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3268, p. 3389), on the subject of contribution between joint tort-feasors.

In a supplemental brief filed here, appellant says that the "Court of Appeals took the position contended for by appellant that the verdict was void and incomplete and did not dispose of the parties or the issues and was insufficient to support the judgment. This, on the ground that since the verdict is the basis and the only basis for the judgment that it must dispose of all the issues and all the parties to the cause and if it does not do so, the defect is fatal and a final judgment entered thereon is a nullity, because it could not have been entered on the verdict of the jury when the finding of the jury was only as to the issues between the plaintiff and one of the defendants."

In the Singleton case, supra, Singleton sued for false arrest. There were six defendants, viz.: Kansas City Baseball & Exhibition Company and its president, Tebeau; National Detective Agency and its president, Laughlin; Sullivan, a policeman; and Boyle, a police inspector. At the close of the case plaintiff dismissed as to Boyle and Sullivan. The jury returned the following verdict: "We, the jury, find the issues for the plaintiff and against defendants, George Tebeau as president of the Kansas Base Ball and Exhibition Company, and Walter B. Laughlin as president of the National Detective Agency, and assess plaintiff's damages at the sum of two hundred and fifty and no/100 ($250.00) dollars."

On this verdict the court rendered a judgment for the plaintiff and against the baseball company and the detective agency, and against plaintiff as to Boyle and Sullivan. It was held that the verdict was too indefinite to support a judgment against the baseball company and the detective agency. And in reaching this result the court said that "the verdict as recorded is the basis and the only basis for the judgment, and for that reason should be certain and definite, not only as to the amount, but also as to the persons or corporate entities who are to pay the amount."

It is apparent that the Singleton judgment was reversed because the verdict was too indefinite to support a judgment against any of the defendants.

In the Spangler-Bowers case, supra, Elvira Spangler-Bowers sued the Singer Sewing Machine Company and its agent Benton,

for personal injury alleged to have been caused by the agent Benton. The case was filed at Independence, Jackson County, but the venue was changed to Kansas City. In an amended answer, *res adjudicata* was pleaded. It was alleged in the amended answer that the cause was tried at Independence; that the jury returned this verdict: "We, the jury, finding the issue in favor of the plaintiff against the following defendants, the Singer Sewing Machine Company, and assess plaintiff's actual damages in the sum of $1,500, and further assess punitive damages in favor of the plaintiff in the sum of $1,500." It was alleged that on this verdict the court rendered judgment that the plaintiff recover of the sewing machine company as specified in the verdict and nothing from Benton.

Later the sewing machine company filed a motion to dismiss "on the ground that the cause was heretofore tried at Independence on February 13, 1931, on the charge of negligence of Frank Benton in causing plaintiff's alleged injury, and said trial resulted in a judgment that plaintiff 'recover nothing as against the defendant Frank Benton' and that plaintiff recover $1,500 actual and $1,500 punitive damages of the Singer Sewing Machine Company; . . . that no motion for new trial and in arrest were filed (at Independence) in behalf of either Singer Sewing Machine Company or defendant Benton or plaintiff; that said judgment is therefore final and conclusive, and since Frank Benton has been adjudicated to be without liability, this releases the Singer Sewing Machine Company."

The Court of Appeals, in ruling the Spangler-Bowers case, said that the record showed that a motion for a new trial was filed at Independence and sustained by agreement of the parties, but also said this: "If such judgment at Independence was rendered, it appears from the motion to dismiss, i. e., by the pleading filed by plaintiffs in error themselves, since the verdict as thus shown is incomplete and defective in that it finds the issue in favor of plaintiff and against the defendants and then recites the name of but one defendant. It is well settled that the verdict is the basis, and the only basis for the judgment. [Singleton v. Kansas City Base Ball, etc., Co., 172 Mo. App. 299, 157 S. W. 964.] The verdict, as shown by the motion, did not dispose of all the issues, and therefore was not sufficient to sustain the judgment, if any, rendered thereon, and, as stated, it was, by agreement of all the parties, set aside. [Proctor v. Garman, 203 Mo. App. 106, 218 S. W. 910, 911; Miller v. Bryden, 34 Mo. App. 602, 608, 609; Fenwick v. Logan, 1 Mo. 401 (reprint p. 223).] The claimed verdict was void and could be collaterally attacked. [Abernathy v. Missouri Pacific Ry. Co., 287 Mo. 30, 228 S. W. 486, 487; Crow v. Crow, 124 Mo. App. 120, 124, 125, 100 S. W. 1123.]"

Manifestly, if the alleged judgment at Independence was set

aside and a new trial granted and no appeal from such (and there was no appeal), then the validity of the alleged verdict and judgment was not involved, and what the court said about such was *obiter*.

Hughey v. Eyssell, 167 Mo. App. 563, 152 S. W. 434, was an action for personal injury against Hugo and August Eyssell and Julia Kinney. In the course of the trial plaintiff dismissed as to Kinney, and at the conclusion of plaintiff's evidence, the court gave a peremptory direction to find for Hugo Eyssell. Plaintiff did not except to the ruling as to Hugo Eyssell, but August Eyssell did. August filed a demurrer to the evidence at the close of plaintiff's case, and at the close of the whole case, but these were refused. The court instructed the jury to return the following verdict for Hugo Eyssell: "We, the jury, find for the defendant Hugo Eyssell." The court "then, in appropriate instructions, submitted issues of fact to the jury," which returned this verdict: " 'We, the jury, find for the plaintiff and assess her damages at the sum of $1312.50.' " August Eyssell filed motion for new trial and motion in arrest. These were overruled, and, in the judgment rendered, "it was adjudged that plaintiff recover judgment against August Eyssell in the amount of the assessed damages and costs and that she 'take nothing by her action in this behalf against defendant Hugo Eyssell and that said defendant go hence without day."

August Eyssell appealed. The judgment was reversed and the cause remanded. The court said: "It will be seen from the foregoing that the jury refused to follow the instruction of the court directing them to find a verdict in favor of Hugo Eyssell. On the contrary, the verdict being general may be interpreted to be against both him and his codefendent. How is it to be known that the jury did not intend that it should be against both? How is it to be known but the jury may have either ignored or overlooked the court's instruction and meant to find against both? And how is it to be known but that the jury would have refused to find specifically against August Eyssell?"

The court, in the Hughey case, quoted from Eichelmann v. Weiss, 7 Mo. App. 87: "The defendants, if liable, are jointly liable, and subject to contribution; and those against whom judgment was rendered have a right to have the question determined whether Weiss is to bear any share of the burden; and, being prejudiced by the error, may take advantage of it." And the court, in the Hughey case, went on to say: "The fact that the trial court instructed the jury to find for Hugo Eyssell does not aid the verdict. The same thing occurred in Wood v. McGuire, 17 Ga. 361, except there, the instruction was to find against one of the plaintiffs, and the jury failed or refused to do it. The trial court there, as here, concluded, as said in that case, that it 'could work the verdict into form and

make it serve.' But the Supreme Court (of Georgia) said that could only be done where the jury have expressed their meaning in an informal manner, and not where there are substantial omissions.''

It may be that the facts, that the trial court directed a verdict for Hugo Eyssell and that the court made no finding as to him, would not aid the verdict as to August, but a peremptory direction to a jury to make a certain finding, which the jury fails or refuses to do, is, under more modern rulings, in effect, the same as if the finding had been made as directed. [State ex rel. Witte Hardware Co. v. McElhinney, supra (Mo. App.), 100 S. W. (2d) 36, 1. c. 39.]

Midwest Natl. Bank & Trust Co. v. Parker Corn Co.; Lindsey v. Nagel; and Boudreau v. Myers (cited by appellant), insofar as they concern the present case, hold that a defect in a verdict must be raised by a motion in arrest.

Dailey v. City of Columbia, 122 Mo. App. 21, 97 S. W. 954, was an action against the city and five individuals for damage to property. At the close of the case, the court directed the jury to find ''a verdict for the five individuals.'' The jury returned a verdict as follows: ''We, the jury, find for the plaintiff and assess the damages at $75.00.'' The judgment was reversed and the cause remanded on the theory that the verdict did not dispose of all the parties. We think that the case of State ex rel. Witte Hdw. Co. v. McElhinney, supra, reaches a more reasonable conclusion on what the situation is, and what should be done when a jury fails or refuses to follow a peremptory direction.

In Winkelman v. Maddox et al., 119 Mo. 658, 95 S. W. 308, the cause was to recover for the proceeds of goods alleged to have been sold by defendants. There were four defendants, Charles, M. L. and John Maddox, and Lee Coe, M. L. and John Maddox, and Coe answered by general denials. Charles Madox filed a general denial and a counterclaim. Prior to submission to the jury, plaintiff dismissed as to M. L. Maddox. The jury returned this verdict: ''We, the jury, find for plaintiff on the account sued on in the sum of $161.72, against Charles Maddox and Lee Coe.''. There was no specific finding as to John Maddox, and no finding on the counterclaim. The judgment was reversed because of the failure of the jury to specifically find as to John Maddox, and because of the failure to find on the counterclaim. The counterclaim feature in the Madox case distinguishes it, in that particular, from the other cases we have reviewed.

In Crow v. Crow, 124 Mo. App. 120, 100 S. W. 1123, the ruling, so far as concerns our question, is stated in headnote 1 (124 Mo. App. 120): ''In an action (on a note) against two defendants where the court gave a peremptory instruction to find for one de-

fendant and submitted to the jury the issues as to the other and the jury rendered a verdict in favor of the other defendant only, no valid judgment could be rendered upon the verdict because it left the cause still pending as to one defendant."

In Proctor v. Garman et al., 203 Mo. App. 106, 218 S. W. 910, it appears that the plaintiff fell on an ice covered sidewalk in Kansas City. She sued the property owners, Charles W. and Belle Garman, and the city. The case was dismissed as to Belle Garman. At the close of the case the court marked "given" a peremptory direction to find for Charles W. Garman, but this was not read to the jury, but the jury was instructed that the case was submitted "only as against defendant Kansas City." The jury returned a verdict against Kansas City. The court recited in the judgment "the dismissal of the case as to the defendant Belle Garman, the marking of 'Given' on the instruction offered by the defendant Charles Garman, and the verdict of the jury against the city. The judgment was in favor of plaintiff, and against the city in accordance with the verdict, but in addition judgment was rendered in favor of defendants Belle Garman and Charles Garman." The judgment was reversed and the cause remanded.

It appears from the cases reviewed that the judgments therein have been reversed and the cause remanded principally on the theory that the verdicts made no findings on the issues as to one or more of the defendants. The Springfield Court of Appeals had such question before it in Jackson v. City of Malden (Mo. App.), 72 S. W. (2d) 850. The cause was for personal injury. Plaintiff brought suit against the city and the St. Louis-Southwestern Railway Company. An amended petition added Connie Landrum as a party defendant. At the close of plaintiff's case the court directed, and the jury returned, a verdict for the railway company. The cause then proceeded against the city and Landrum, and the jury returned a verdict for the plaintiff and against the city, but made no finding as to Landrum, "although forms of verdicts for and against Landrum were submitted by the court to the jury." Judgment was entered on the verdict against the city. Motion for new trial and motion in arrest were filed, but were overruled and the city appealed. The city contended that the court erred in entering judgment against it "before the cause was determined as to Connie Landrum." The Court of Appeals ruled against this contention, basing the ruling on State ex rel. Cunningham v. Haid et al., 328 Mo. 208, 40 S. W. (2d) 1048; and Lavignon v. Dietzel et al. (Mo.), 34 S. W. (2d) 92.

The Lavignon case was for personal injury and was brought against Irvin Dietzel, Albert M. and Marie Koch, and Florence Pollihan. The jury found for plaintiff as against Albert M. Koch and

Pollihan, but found in favor of Dietzel. At the close of plaintiff's case the court sustained a demurrer to the evidence as to Marie Koch, but the jury "made no finding of the issues as to her, and her name was not mentioned in the judgment." On appeal, defendants Albert M. Koch and Pollihan assigned error on "the failure of the judgment to dispose of the issues as to all the parties to the suit." This assignment was ruled as follows: "The failure of the judgment to formally dispose of the issues as to the defendant Marie Koch is error appearing on the face of the record proper. But the error is one with respect to which the defendants, in a case of this kind, cannot complain. Plaintiff in the first instance was privileged to bring his action against all of the defendants or any lesser number of them, as he saw fit. Having brought it against all, he had a right to discontinue it as to any one or more of them, as he may have been advised. He could have dismissed the action as to any one or more of them at any stage of the proceeding, even after the cause had reached this court on appeal. These rights of the plaintiff were, and are, paramount to any right of contribution which may exist among the defendants as joint tort-feasors. [Berkson v. Railway Co., 144 Mo. 211, 216, 45 S. W. 1119; Gerber v. Kansas City, 311 Mo. 49, 60, 277 S. W. 562; Flenner v. Southwest Mo. Railroad Co., 221 Mo. App. 160, 290 S. W. 78.] In the instant case no right of either of the defendant-appellants was prejudiced or in any wise affected through the failure of the judgment to dispose of the issues as to the defendant, Marie Koch, in her favor, conformably to the instruction which the court had given the jury."

State ex rel. Cunningham v. Haid, supra, was on certiorari to quash the opinion by the St. Louis Court of Appeals in Cunningham v. Franke et al., 18 S. W. (2d) 106. Cunningham v. Franke et al., was for personal injury alleged to have been caused by the collision of two trucks, resulting in injury to plaintiff who was on the sidewalk. Plaintiff brought suit against Arthur and Louis Franke, and the Hauck Bakery Company. The cause was brought to the December Term, 1926, of the circuit court, St. Louis, and process was issued to all of the defendants, returnable to said term. The bakery company was duly served, but process was not served on the Frankes until January 29, 1927, and the return of such service was not filed until April 11, 1927. The February, 1927, term of the court had, in the meantime, come on and an *alias* summons, in the meantime, had been issued for service on the Frankes, returnable to the April, 1927, term of the court. The return on the *alias* was that neither of the Frankes "had been found." June 6, 1927, "a default was granted as to defendants Franke." June 30, 1927 (in the April term), an amended petition was filed. At the trial "the court indicated that plaintiff would either have to dismiss as to the Frankes,

who made no appearance at the trial, either in person or by counsel, or continue the case to the next term on account of defective service as to them. Plaintiff's counsel insisted that he was satisfied with the service and the trial proceeded," and resulted in a verdict and judgment against all of the defendants. The bakery company appealed.

In ruling Cunningham v. Franke, the St. Louis Court of Appeals said: "The question raised on appeal here is that there was no valid service on the defendants Franke, and therefore there were but two courses open to plaintiff, that he should have either dismissed the case as to the Frankes and proceeded against the appellant alone, or continued the case and had the Frankes brought in at a subsequent term of court, and, not having done so, the judgment is void, because the judgment as rendered did not finally dispose of all the parties to the action. We are of the opinion that appellant's position is well taken. There is no effort on the part of respondent's counsel to sustain the position that the service upon the Frankes was good. With no valid service upon the Frankes, plaintiff should either have dismissed as to them or continued the case until the next term. Plaintiff refused to dismiss as to the Frankes, standing upon the service he had obtained. Under the provisions of Section 4223, Revised Statutes 1919 (now Sec. 3268, R. S. 1929) defendants are given the right of contribution after judgment against them. One defendant, in a case where two are sued as joint tort-feasors, may appeal, and in the appellate court take advantage of errors comitted as to the other defendants, when the judgment is against both, or the relation between the defendants is such that, if the appellant is compelled to pay the judgment, he would have the right of reimbursement."

In the certiorari case (State ex rel. Cunningham v. Haid et al., supra), the opinion in the Cunningham case, by the Court of Appeals, was quashed. In the certiorari case (328 Mo. 208, 40 S. W. (2d) l. c. 1050) the court said: "The statute (Sec. 3268, R. S. 1929) relating to contribution, referred to in the opinion, creates rights and obligations as between defendants in a judgment founded upon an action for tort. It imposes no duty whatever upon the plaintiff with respect thereto. It neither requires plaintiff to bring his action against all of the joint tort-feasors, nor does it require him to obtain a valid judgment against all whom he does elect to sue." And then the court quoted from Lavignon v. Dietzel, supra, as above appears.

The situation in Jackson v. City of Malden; State ex rel. Cunningham v. Haid et al.; and Lavignon v. Dietzel et al., supra, was not like the situation in the present case. And this because of Section 7539, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7539, p. 5982). This section reads: "Whenever a city of over one hundred and fifty

thousand inhabitants shall be sued in any court in this state and the cause of action on account of which said city is sued shall arise from the wrongful or unauthorized acts or carelessness and negligence of any person or corporation subject to service in this state, and such wrongful or unauthorized acts or carelessness and negligence shall also make such person or corporation liable to an action by the plaintiff on the same account as such city is sued for, such city may, within fifteen days after the first day of the next term of court after the service of the writ of summons, file a motion, in writing, in said case, notifying the plaintiff therein to make such person or corporation a party defendant in said suit in accordance with the facts constituting the liability of such person or corporation, which facts said city shall set forth in said notice and shall verify the same by affidavit. The plaintiff in said suit shall then proceed to join such person or corporation as a party defendant in said suit, in accordance with the facts set forth in said notice, and such suit shall not be prosecuted against said city until such person or corporation is made a codefendant with such city; *Provided, however,* that in case the facts set forth in said notice do not make such person or corporation named therein liable to an action on the same account as such city is sued for in such case, said plaintiff may file a motion to strike out said notice, and if said motion shall be sustained by the court, the plaintiff in such case may proceed against defendant city alone, as if said notice had not been filed; *and provided further,* that if the plaintiff shall make such person or corporation as may be named in said notice a party defendant in said suit and shall have caused summons to be issued for such person or corporation, and such person or corporation cannot be served with process by the officer to whom such writ is directed, then the plaintiff in such case may proceed against the city alone.''

██ We judicially know (Heather v. City of Palmyra, 311 Mo. 32, 276 S. W. 872) that Kansas City has a population of over 150,-000, hence plaintiff, in the present case, did not have the same freedom as to procedure as in the Jackson, Cunningham and Lavignon cases. But if such freedom had existed, we are nevertheless of the opinion, and so rule, that under the situation here, the giving of the peremptory direction to find for the service company, and the verdict thereafter returned, disposed of all the issues and all the parties, and as effectively as if the jury had returned a verdict according to the peremptory direction, and judgment for the service company had been entered thereon. Plaintiff's main instruction told the jury that if the facts therein predicated were found, ''then your verdict should be in favor of plaintiff and against defendant Kansas City, Missouri.'' There was nothing in any instruction that indicated, in the least, that the jury should find one way or the other, as to the service company.

It is true that the verdict is general, does not specifically name Kansas City. Had plaintiff dismissed as to the service company when the peremptory direction to find for the service company was given, and the dismissal entered of record, and had the verdict thereafter been returned in the same form as here, there would be no room to complain.

If the trial court had entered judgment *for* the service company, even though there was no finding by the jury as to it, then the situation would have been like that which the St. Louis Court of Appeals said should have been in the Witte Hardware Company's suit on the note. But instead of entering a judgment for the service company, the trial court in the present case dismissed the cause as to the service company. The dismissal was a final disposition of the issues as to the service company.

It is our conclusion that the court did not commit error in overruling the motion in arrest.

We might here state that the public service company filed a motion in this court to dismiss the appeal. This motion was taken with the case. It is not necessary to go into the motion. It is overruled.

█ Was plaintiff guilty of contributory negligence as a matter of law? Plaintiff, age thirty-one, was injured by stepping into an uncovered and unguarded manhole in East Fifteenth Street, Kansas City, and between Cleveland and Myrtle avenues, north and south streets. Double street car tracks were in Fifteenth Street. A Sears-Roebuck store was on the south side of Fifteenth Street, and west of Cleveland Avenue, as we understand the record. Plaintiff testified that on the day of her injury, she went to the Sears-Roebuck store in an automobile with a Mr. Shartzer and her daughter. She was the only one of the three to leave the car, and had an understanding "about where she would find the car" on her return from the store. She was in the store twenty or thirty minutes and made some purchases. When she came out, she had four packages, a purse, a pair of house shoes, some yard goods (10 or 12 yards), "and another bundle with some clothing." She walked east on Fifteenth Street "looking for the automobile, not knowing which side of the street they would park on." She thought she saw the car on the north side of the street and started across. The day was clear and the weather dry. The traffic was heavy, both east and west, on Fifteenth Street. She hesitated, "because the cars were coming so fast she had to wait for a break in the traffic." The break occurred and before she started across, she "looked both ways and straight ahead and saw the automobile."

As to the manner in which plaintiff crossed the street, she testified on direct examination:

"Q. When you looked straight ahead of you could you see the

street and the pavement of it as you looked straight ahead? A. Well, I never noticed.

"Q. Did you notice or see any hole in the street before you started. across? A. No, sir.

"Q. You say you did look straight ahead, though? A. Yes, sir.

"Q. Was that when the break was in the traffic? A. Yes.

"Q. And you had a view then and you could see the pavement, could you? A. Yes.

"Q. And you didn't see any hole? A. No, sir.

"Q. Then when you started across the street, just state whether you had to angle or went straight on across. A. Well, I went kind of straight on across. I never angled.

"Q. What was your gait, a walk, a run or how? A. Well, I was walking pretty briskly. I wasn't running.

"Q. As you stepped off of the curb and started across the street and while you were crossing the street which direction were you looking? A. East and west for the cars.

"Q. East and west? A. For the cars.

"Q. Did you still have these packages? A. Yes, sir.

"Q. How far did you get across the street before anything happened? A. About middleways.

"Q. This was Fifteenth Street, was it? A. Yes, sir.

"Q. And as you got about middleways across the street what happened? A. I just fell into space; stepped off into space.

"Q. And which foot stepped off? A. My right one."

Cross-examination:

"Q. Now, how did you walk as you went across the street? A. Well, I walked.

"Q. A rather brisk walk? A. Yes, sir.

"Q. How many feet do you ordinarily take when you take a step? A. Well, I wouldn't know.

"Q. And as you walked across you, of course, were looking for automobiles, were you not? A. Yes, sir.

"Q. That distracted your attention so that you were looking up and down the street? A. Yes, sir.

"Q. To see whether cars were coming? A. Yes, sir.

"Q. And as you did that you naturally twisted your body to some extent in the direction in which you looked, did you not? A. Well, I wouldn't say that, no, sir.

"Q. But, you turned your head? A. I turned my head, yes, sir.

"Q. And you turned your head to the right to see if cars were coming from the east and after you finished that you turned your head to the left to see whether cars were coming from the west? A.

Yes, sir, but it don't take much of a turn to see on Fifteenth Street if you get out where you can see the cars.

"Q. As you were crossing the street, you did that continually, did you not? A. Yes, sir.

"Q. You would look one way and then another? A. Yes, what most anyone would do.

"Q. What most anyone would do to see whether cars were coming from either the right or the left? A. Yes, sir.

"Q. And that is the only directions you were looking? A. Yes.

"Q. And you did that also to see whether a street car was coming? A. Yes, sir.

"Q. Either from the right or from the left? A. Yes, sir.

"Q. And as you were walking ahead that is what you were doing? A. Yes, sir.

"Q. All of the time? A. Well, I glanced across the street to the car.

"Q. When did you glance across the street to the car? A. Well, after I got—before I got even anyways near the middle of the track.

"Q. Before you got anyways near the middle of the track? A. Yes.

"Q. In other words, you were out in the street walking across to a car that had attracted your attention over there and you looked toward it? A. Once, yes, sir.

"Q. Once, to see whether it was the car and at the same time after you did that you looked to the right to see whether street cars or automobiles were coming? A. Yes.

"Q. After you did that you looked to the left to see whether automobiles or street cars were coming? A. Yes, sir.

"Q. And you did not—these bundles you had did not obstruct your view in any way? A. No, sir.

"Q. Didn't obstruct your view in any direction? A. No, sir.

"Q. And the first thing you know, you fell into this hole, you say? A. Yes, sir.

"Q. And you hadn't seen it before? A. No, sir.

"Q. And your foot suddenly went down into it? A. Yes, sir.

"Q. Nothing obstructed your view as you crossed the street? A. No, sir.

"Q. No cars dashed in front of you or behind you? A. No, sir."

Plaintiff's witness Roy Kort, who operated "an automobile wrecking concern" near where plaintiff fell, saw her fall. He saw her "crossing the street; she had a bundle in her arms." Kort further testified that Mersington Street (a north and south street) "was not cut through there and people, when crossing Fifteenth Street, would usually cross right there where the manhole was."

It was plaintiff's duty to exercise ordinary care for her own safety in walking across the street; but this duty, in her situation, also required her not only to look where she was walking, but to look both east and west for traffic on Fifteenth Street. In Stith v. Newberry Co., 336 Mo. 467, 79 S. W. (2d) 447, l. c. 453, this language appears: "Of course, it is the duty of every pedestrian to keep a general lookout so as to observe obstructions or dangers, to use his senses, and to see what is clearly before his eyes. There was, however, nothing so unusual under these circumstances in the conduct of plaintiff, in walking along on Saturday night in a crowded business district looking into storekeepers' display windows, that it would be contributory negligence as a matter of law."

In Merritt v. Kansas City (Mo. App.), 46 S. W. (2d) 275, l. c. 279, 280, the court said: "Nor was plaintiff concluded by failure to discover and avoid the hole into which she fell. She was not aware of its presence and she was not required to rivet her eyes to the ground in order to discover possible defects, but had a right to assume that the street was in a reasonably safe condition for use. Even though close observation might have revealed the defect in the street, plaintiff was not required to exercise the scrutiny of an inspector, but was only required to regulate her conduct as an ordinarily prudent person would do under the circumstances. Whether she did so was a question of fact for the jury." [See, also, Crockett v. City of Mexico, 336 Mo. 145, 77 S. W. (2d) 464; Scanlan v. Kansas City, 223 Mo. App. 1203, 19 S. W. (2d) 522; Shuff v. Kansas City (Mo. App.), 257 S. W. 844; Bianchetti v. Luce (Mo. App.), 2 S. W. (2d) 129.]

Under the facts, we think the question of plaintiff's negligence was one for the jury.

The fourth assignment, viz.: On sustaining the Kansas City Public Service Company's demurrer to the evidence at the close of plaintiff's case, is disposed of in the ruling on the assignment based on overruling the motion in arrest. We have examined the other assignments, but fail to find substantial merit, and we do not think it necessary to go into detail as to them.

The judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.,* absent.