ROBERT O. SINGLETON, Respondent, v. KANSAS CITY BASE BALL & EXHIBITION COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. **FALSE ARREST AND IMPRISONMENT: What Constitutes.** Plaintiff reported for duty as a ticket taker at one of the gates to a baseball park. He was told by the manager to stay about the office. Plaintiff took off his coat and hat, and began work in the office as directed. In a few moments a policeman in uniform came in, took hold of plaintiff and asked him if his name were Singleton. Upon being answered in the affirmative, the policeman told him to "get your hat and coat and go with me; the inspector of detectives at the police station wants to see you." Plaintiff asked the manager, who had directed him to stay in the office and not go to the gate, what was wanted of him at the police station. The manager replied he did not know; that they had telephoned out they would be after him. Plaintiff then went to the station with the policeman. Upon arriving there he was taken into a room

and questioned by the inspector and also by a detective agency which had caused him to be brought to the station. After telling him they "had the goods on him" that he "had better come on through and tell all he knew" and otherwise interrogating him, they took him to another room in the station and told him to "stay there" until they could learn what was to be done with him. *Held*, that this constituted an arrest or was, at any rate, sufficient evidence upon which to submit the question of whether plaintiff was arrested and imprisoned or not.

2. ————: ————: **Agency: Arresting Officer Acting Within Scope of Authority.** Defendant's president employed a detective agency to maintain order at the park and prevent betting and the violation of the park rules. Defendant also requested this agency to investigate "irregularities" at the gates, especially plaintiff's and secured the co-operation and help of the inspector of detectives at the police station, suggesting that plaintiff be taken there for investigation. Pursuant thereto a policeman arrested plaintiff and took him to the station where he was questioned and held until defendant's desires concerning what should be done with plaintiff could be ascertained. Plaintiff was then released on condition that he would return next morning for further examination. *Held*, that these facts rendered all the defendants liable for the unlawful arrest.

3. **TRIAL: Verdict: Ambiguity in.** Where a verdict is indefinite or uncertain as to the parties against whom it is found, the judgment rendered against certain of the defendants and in favor of certain other defendants, will be set aside on appeal and the cause remanded for a new trial. Even if the verdict could be deemed a verdict against certain individuals, yet as the judgment of the court was in favor of those individuals, the appellate court cannot remand the cause and order judgment rendered against such individuals, since, in that event, they would have no opportunity to appeal.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Hadley, Cooper, Neel & Wilson* for appellant.

(1) A verdict must not be ambiguous, as in this case, but must be definite and certain as to parties and issues; and the judgment must follow and conform to

the verdict, which is the basis and the only basis of the judgment. Newton v. Railroad, cause No. 11486, decided by Kansas City Court of Appeals on Feb. 3, 1913; Cattell v. Publishing Co., 88 Mo. 356; Haumueller v. Ackermann, 130 Mo. App. 387; Hughey v. Eyssell, 152 S. W. 434; Kenney v. Railroad Co., 79 Mo. App. 204; 29 Am. & Eng. Ency. Law (2 Ed.), 1016; 2 Black on Judgments (2 Ed.), secs. 116, 186; 1 Freeman on Judgments, sec. 50a; 11 Ency. of Pl. & Pr., 951. (2) The court should have required the jury to correct the verdict, so as to make it definite, certain and complete, before it was received and recorded: Newton v. Railroad, supra; Cattell v. Publishing Company, supra. (3) The verdict was further fatally defective in not finding the issues as to all the parties. Hughey v. Eyssell, supra; Winkelman v. Maddox, 119 Mo. App. 658; Ferguson v. Thacher, 79 Mo. 511; Miller v. Bryden, 34 Mo. App. 602; Schweickhardt v. St. Louis, 2 Mo. App. 571; 22 Ency. of Pl. & Pr., 872. (4) The evidence does not show that plaintiff was actually arrested or detained. Cramer v. Harmon, 126 Mo. App. 54; 12 Am. & Eng. Ency. Law (2 Ed.), 733, 734; 19 Cyc. of Law and Proced., 322, 323; Ahern v. Collins, 39 Mo. 151; Wilkerson v. Hood, 65 Mo. App. 493. (5) Even if arrested, the plaintiff's detention was not authorized by defendant Kansas City Base Ball and Exhibition Company, and any arrest made or caused to be made by defendant Laughlin, or his detective agency, was without the scope of their employment for which defendant Kansas City Base Ball and Exhibition Company cannot be held liable. Milton v. Railroad, 193 Mo. 46.

*Martin J. O'Donnell* for respondent.

(1) This court should reverse the judgment with directions to enter judgment on the verdict against defendants George Tebeau and Walter B. Laughlin.

Berkson v. Railroad, 144 Mo. 211; McGinnes v. Railroad, 200 Mo. 362; Baker v. Thompson, 89 Ga. 486; Matthews v. Railroad, 56 N. J. L.; Kaufman v. Storage Co., 10 Misc. (N. Y.) 53; 22 Am. & Eng. Ency. of Pr., 853, note 3; 38 Cyc., 1882; Holmes v. Braidwood, 82 Mo. 610; 38 Cyc. 1890; Dozier v. Jerman, 30 Mo. 220; Weathers v. Railroad, 111 Mo. App. 315; McCord v. McCord, 77 Mo. 166; Turner v. Anderson, 236 Mo. 523; 12 Century Digest, No. 1739, page 1782; 1 Am. and Eng. Ency. of Law, 1043; Ranney v. Bader, 48 Mo. 541; Hancock v. Buckley, 18 Mo. App. 465; Burly v. O'Dyer, 61 Mo. App. 348. (2) The fourth point made by defendant, to the effect that plaintiff was not actually arrested, is answered by Sec. 5120, R. S. 1909, defining arrest, and by the record. Ahern v. Collins, 39 Mo. 151; Dunlevy v. Wolferman, 106 Mo. App. 46; Sec. 5120, R. S. Mo. 1909. (3) The attempt of the Kansas City Baseball and Exhibition Company to change front under point four and endeavor to unload its liability on its partner in equity is contrary to the maxim that enjoins honor even among thieves and constitutes an admission vitiating all its other contentions. Carp v. Ins. Co., 203 Mo. 295.

TRIMBLE, J.—In this case damages are sought to be recovered for an alleged unlawful arrest and imprisonment of plaintiff by defendants.

The defendant, Kansas City Baseball and Exhibition Company, is a corporation and the defendant, George Tebeau, is its president; the defendant, National Detective Agency, is a corporation and the defendant, Walter B. Laughlin, is its president; the defendant, Eugene Sullivan, was a member of the police force in Kansas City as was the defendant, Edward P. Boyle, who was acting as inspector of detectives.

At and prior to the time of the alleged arrest and imprisonment, the defendant, Kansas City Baseball and Exhibition Company, was maintaining a baseball

park in Kansas City where professional games of base-ball were played, and to which the public was admitted at various gates upon the presentation of tickets showing the admission fee had been paid. Some months before the alleged arrest, Tebeau, as president of, and acting for, the Kansas City Baseball and Exhibition Company, employed Laughlin and his National Detective Agency to be present at the gatherings in the park for the purpose of maintaining order, the prevention of betting, infraction of the rules and anything likely to annoy the patrons of the game. While engaged in this service Laughlin was requested by Tebeau to investigate the admission of spectators through the turnstiles to the game by the various gate keepers. Laughlin did this, and, by "checking" the number of spectators admitted with the number shown by the turnstiles, found "irregularities" in this that various persons were admitted free of charge or paid the admission money to the gate keeper instead of to the ticket seller. These irregularities, and the gates at which they were found, were reported in writing to Tebeau.

The plaintiff was a ticket taker at the bleacher gate on the Olive street entrance to the baseball park. On the evening of July 3, 1910, Tebeau, after receiving these reports, was temporarily in Kansas City and spoke to Laughlin about having plaintiff Singleton investigated. In this conversation Tebeau suggested having Singleton brought to police headquarters where he could be questioned. He also said he knew Boyle the inspector of detectives at headquarters and would have him to assist them; that he would see Mr. Boyle for the purpose of having him bring Singleton to headquarters. Tebeau did see Boyle that evening and spoke to him on the subject. Laughlin also, pursuant to his conversation with Tebeau about investigating Singleton at the city hall or police headquarters, saw Boyle and spoke to him about Singleton. And an arrangement was made that when Singleton was brought

to the inspector's office, Laughlin would come down and participate in the examination. The next day, July 4, when the plaintiff appeared at the park to take his place as a ticket taker at the gate, he was told by Savage, the general manager at the park, to stay in the office and "work extra around." Plaintiff took off his hat and coat, hung them in the office, and, after being there for fifteen or twenty minutes, the defendant Eugene Sullivan, a policeman, and in his uniform, came up and took hold of plaintiff by the arm saying, "Your name is Singleton?" Plaintiff replied "Yes, sir." The policeman asked "Got your hat and coat here?" Plaintiff replied "Yes, sir." The policeman then said "Get your hat and coat and come with me; the inspector wants to see you." Plaintiff got his hat and coat and asked Savage what it was they wanted with him. Savage replied that he didn't know; they had called up by telephone and said they would be out after him. Plaintiff then went with the policeman to the police station. When they got there, according to plaintiff, "Mr. Boyle and Mr. Sullivan and Mr. Laughlin and another gentleman came in there and took seats. Mr. Boyle first says, 'Now, Singleton, we have you with the goods on, you come through and tell what is going on about the gate out there, about yourself and the others, and we will let you through about this and not cause you any trouble.' He made that statement two or three times. Then Mr. Laughlin questioned me and Mr. Sullivan questioned me, and another gentlemen talked some after they found out I knew nothing what they wanted, Mr. Laughlin says, 'All right, I know what we will do, we will call up Mr. Tebeau and see what he wants done to you and see if he wants someone else brought down. I know what he wants to do with you.' They took me in another room and shut the door and says stay there until they called up Mr. Tebeau. I was in there some little time then Mr. Boyle and Mr. Laughlin came in and Mr. Boyle said

Mr. Laughlin wanted to see me, and they would let me go if I would agree to meet Mr. Laughlin at his office the next day. It was a holiday and I didn't want to stay around the office all afternoon, and I agreed to that." Plaintiff further testified that he knew Sullivan was a policeman at the time; that the latter did not ask him if he would go but told him to get his hat and coat and go with him that. the inspector wanted him; that plaintiff offered no physical resistance but obeyed his command to go with him to the station.

Defendants testified that plaintiff was not placed under arrest; that he was merely requested to go to the station in order that it might be learned just what irregularities were going on at the park.

At the close of the testimony plaintiff dismissed as to Inspector Boyle and the policeman Sullivan, and amended his petition by striking out all allegations concerning punitive damages.

The jury returned the following verdict: "We, the jury, find the issues for the plaintiff and against defendants, George Tebeau as President of the Kansas Base Ball and Exhibition Company, and Walter B. Laughlin as President of the National Detective Agency, and assess plaintiff's damages at the sum of two hundred and fifty and no-100 ($250.00) dollars.

"CHARLES V. PURCELL, Foreman."
"K. C. Mo. 5-25-1911."

The court rendered judgment for the plaintiff against the defendants, Kansas City Base Ball and Exhibition Company and National Detective Agency, for $250, interest and costs; and for the defendants, Edward P. Boyle, Eugene Sullivan, George Tebeau and Walter B. Laughlin.

In the form in which the verdict was returned it is not definite nor certain as to the parties against whom it is found. It is clearly not against the corporations themselves. In fact, one of the corporations is not cor-

rectly named in the verdict. Nor is it against Tebeau and Laughlin as individuals since it shows on its face that, if anything, it is against them in an official and not an individual capacity. It cannot be said that the verdict is against all four of the defendants. The most that can be said for the verdict is that it is an uncertain hybrid, a species hitherto unknown, being a cross between a finding against the corporations alone and one against the individuals alone. And it is only by conjecture or by attempting to construe the verdict that one can say that it is really and definitely a finding against either. The trial court construed it is a finding against the corporations and rendered judgment against them and in favor of the individuals.

It is such an easy matter to call the jury's attention to the ambiguity in the verdict at the time it is returned, and have it corrected and made absolutely definite and certain before the jury is discharged, that no room ought to be given for the rule that an uncertain or ambiguous verdict can be received and recorded and then helped out by judicial construction when judgment is to be rendered upon it. As said in Newton v. St. Louis Railroad, 153 S. W. 495, "The only proper and safe way to correct such an ambiguity in the verdict is for the trial court, at the time of its rendition, to call the attention of the jury to the defect and have the correction made in the verdict before it is received and recorded." The verdict as recorded is the basis and the only basis for the judgment, and for that reason should be certain and definite not only as to the amount but also as to the persons or corporate entities who are to pay the amount. [Cattell v. Dispatch Publishing Co., 88 Mo. 356; Haumueller v. Ackerman, 130 Mo. App. 387; Hughey v. Eyssell, 152 S. W. 434.]

Respondent concedes that the verdict is not one on which a judgment against the two corporations can be based, but insists that the words "as president,

etc.," in each case can be treated as surplusage and the cause should, therefore, be reversed and remanded with directions to enter up a judgment against Tebeau and Laughlin personally. In the first place, there is less reason for supposing the verdict would have been returned against these two individuals than against the companies. The terms "as president, etc.," cannot be considered as descriptive of the person because of the use of the word "as" meaning that the jury intended, in some cryptic way, that these two defendants were to be punished, not in their individual, but somehow in their official capacities. In the next place, the judgment, as it now stands, is for the individuals. They had no need to appeal. If now we reverse and remand the case with directions to enter up judgment against them, they may feel themselves greatly in need of an appeal but will have no opportunity to obtain one.

Appellants insist that the evidence does not show that plaintiff was arrested or detained and deprived of his liberty, and that for this reason the case should be reversed outright instead of being remanded. We do not think so. There was ample evidence to justify the submission to the jury of the question whether or not there was an arrest. If plaintiff's version of what happened is true, the jury were right in finding that plaintiff was arrested and detained at the station and was not released until Tebeau had been consulted over the phone as to what to do with him, and an agreement reached that he would return when wanted the next day. To effect an arrest one does not have to put handcuffs on a man, or to take him forcibly by physical violence. If, by the manifestation of governmental authority, the officer commands the person to go with him and thereafter takes him to the place where persons arrested are usually taken, the person going in submission to such authority and not purely of his own

volition, then this constitutes an arrest. [Sec. 5120, R. S. Mo. 1909; Ahern v. Collins, 39 Mo. 146, 1. c. 153.] Plaintiff had taken off his coat and hat and had gone to work at the place of his employment. A policeman in uniform takes him by the arm, asks his name and then commands him to get his coat and hat and go with him to the police station. This is exactly the ceremony gone through with in making all other arrests except in those cases where the party arrested is considered a desperate character and likely to offer resistance or try to escape. Upon arrival at the station, defendant Laughlin, according to pre-arrangement comes down, and together they take plaintiff into a room. He is told that they "have the goods on him" and to "come on through" and tell all. Then he is put into another room and told to "stay there" until Mr. Tebeau can decide what is to be done with him. If these circumstances are true, the jury, as sensible men, rightly decided that there had been an arrest.

Appellant also urges that, even if plaintiff was arrested, The Kansas City Base Ball and Exhibition Company cannot be held liable as the arrest was not authorized by it, and the arrest was not within the scope of Laughlin's employment. The evidence showed otherwise, or at least was sufficient to authorize the submission of that question to the jury. Laughlin and his Agency were employed at the park to perform police duty; he was spoken to by Tebeau, the president of the base ball company, and requested to take Singleton down to the inspector's office whose help would be enlisted. Pursuant to that request a police officer goes to the park and takes plaintiff down to the station where he is questioned and held until Tebeau can be communicated with and asked what he wants done with him. Certainly, the arrest if there was one, was within the scope of the agent's employ-

ment and was the direct result of the principal's authority.

For the reason hereinabove given, therefore, the case is reversed and remanded for a new trial. All concur.