ARCHIE CABLE, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.—128 S. W. (2d) 1123.

Kansas City Court of Appeals. April 3, 1939.

*John C. Landis,* 3d, *William C. Michaels* and *Kenneth E. Midgley* for appellant.

*Harry Cole Bates, Landis & Landis* and *Michaels, Blackmar, Newkirk, Eager & Swanson,* of Counsel.

1096

*Joseph Goldman* and *John D. McNeely* for respondent.

CAMPBELL, C.—The defendant issued to plaintiff two policies of life insurance dated December 20, 1927, one for $3000, the other for $2000. Attached to and forming a part of each policy was a supplemental contract in which it was provided that defendant, upon receiving at its home office in New York City proof on forms to be furnished by it, that plaintiff while said policies and supplemental contracts were in force became totally and permanently disabled as the result of bodily injuries or disease occurring and originating subsequent to the issuance of the policies, and that such disability continued uninterruptedly for at least three months the defendant

would pay to plaintiff a monthly income of $10 for each $1000 of insurance.

This action, in two counts, brought December 10, 1936, is to recover the monthly income provided in the supplemental contracts upon the alleged grounds that plaintiff became totally and permanently disabled on or about July 27, 1935, from the effects of "hernia, amputation of left leg as the result of freezing and gangrene, & diabetes."

Trial to a jury resulted in a verdict for plaintiff on the first count (the $3000 policy) for $30; and on the second count (the $2000 policy) for $20. From the judgment on the verdict the defendant has appealed.

The defendant at the close of plaintiff's evidence and again at the close of all of the evidence requested that verdict be instructed in its favor. The requests were refused. The latter request is the only one with which we are concerned.

The insistence that plaintiff failed to make a case for the jury is founded upon the claim that plaintiff failed to show that "he was suffering prior to suit with a disability resulting from disease originating after the policies were issued, and that he had furnished defendant due proof thereof."

Plaintiff testified he suffered a left inguinal hernia in the early part of 1926, was surgically treated therefor at the Mayo Clinic in July, 1926; that after remaining in the clinic about five weeks he returned to his home in St. Joseph and did not thereafter suffer from the hernia; that from that time he attended to his mercantile and loan business until in February, 1935, when his left foot was frozen while he was moving snow from his driveway; that in July, 1935, he suffered a right inguinal hernia and was surgically treated therefor; that at that time he was advised that he had diabetes, which was the first time he had known he had that disease. While plaintiff testified his foot was frozen in February, 1935, he also said that he was taken to the Missouri Methodist hospital in a day or two thereafter and that the records of the hospital would show the "exact date" when he entered the hospital. He also testified his foot was frozen subsequent to the hernia operation in July, 1935. So we conclude, as defendant contends, that the frostbite, if any, was in February, 1936. From the time his foot was frozen plaintiff was unable to attend to his business, became totally and permanently disabled. It was shown in plaintiff's evidence that at the time he applied for the insurance he was examined by defendant's medical examiner, which examination included an examination of his urine.

Defendant introduced the records of the Missouri Methodist hospital. Therein it was stated that plaintiff was admitted to the hospital February 2, 1936, discharged 6 days later, final diagnosis "Diabetes Mellitus Arteriosclerosis;" that he "had had diabetes for about ten

years but felt very well until about two months ago when he noticed pain in left ankle while walking.''

Defendant contends that plaintiff, as a part of his proof of claim, furnished to it a letter of the Mayo Clinic dated July 30, 1936. This letter was introduced by the defendant and it is known in the record as defendant's exhibit A. The letter was addressed ''To whom it may concern'' and stated in substance that plaintiff was admitted to the clinic in May, 1926, on account of a left inguinal hernia; that he had a slight amount of sugar in his urine, required 45 units of insulin daily for control; that subsequently his diabetes proved to be of a very mild degree; that he returned to the clinic in February, 1936; had been operated on in July, 1935, for right inguinal hernia ''and following this there was an exacerbation of his diabetes requiring the administration of insulin to control it.'' There was expert opinion evidence from which the jury could have found plaintiff had diabetes at the time the policies were issued.

Plaintiff testified that he did not tell the Missouri Methodist hospital that he had had diabetes for ten years, or that he had diabetes; that he had no trouble with his feet until his left foot was frozen. From this evidence the jury could find the statements in the hospital record were not conclusive on plaintiff.

Of the Mayo Clinic letter: Plaintiff said that though he received that letter he did not deliver it to the defendant. His testimony is to the effect he did not take insulin in 1926, or at any other time prior to July, 1935. If plaintiff's testimony were true, then the statement in the letter to the effect that 45 units of insulin was administered to him daily in 1926 was untrue.

Further defendant's medical examiner examined plaintiff before the policies were issued. The record does not disclose whether the examiner did or did not report his findings to the defendant, but the examiner knew or had the means of knowing whether or not plaintiff had diabetes. It is not unreasonable to presume defendant chose a competent examiner; that such examiner well performed his duty and reported his findings to the defendant. The report must have been favorable, else the policies would not have been issued.

In determining whether or not the evidence was sufficient to show that plaintiff was totally and permanently disabled within the terms of the contracts, we must view the evidence in a light most favorable to him. The fact the plaintiff in his deposition said that he delivered Exhibit A to the defendant is not conclusive of that question for the reason that, in the trial, he testified that he had not delivered that exhibit to the defendant. Even in the absence of explanation of the lack of harmony between the statements in the deposition and his evidence at the trial the jury could believe he told the truth in the trial. [Sugarwater v. Fleming, 316 Mo. 742, 293 S. W. 111, 115; Moffett v. Butler Mfg. Co., 46 S. W. (2d) 869; Parrent v. Mobile &

Q. R. Co., 70 S. W. (2d) 1068, 1074.] The value of plaintiff's evidence, even though it strains credulity, was nevertheless for the jury. [Ensler v. Mo. Pac. R. Co., 23 S. W. (2d) 1034, 1037.]

In ruling the request for directed verdict we have not considered the evidence of lay witnesses to the effect that plaintiff appeared to be in good health prior to the summer of 1935. The personal testimony of plaintiff that from the time he underwent the hernia operation in 1926 to July, 1935, he was active in his business, never suspected that he had diabetes or any other ailment, never took insulin nor regulated his diet, is not without value. In meeting this situation the defendant in its statement and argument *assumes* that plaintiff had diabetes in 1926 and that insulin was administered to him at that time. It may be that plaintiff's statement to the effect he did not have diabetes in 1926, without more, was of no value; still as the fact that insulin must be injected subcutaneously is well known, his evidence that he did not take insulin prior to 1935 was the statement of a fact within his knowledge and its worth was for the jury.

Considering the facts and circumstances in a light most favorable to plaintiff we conclude the evidence was sufficient to warrant the jury in finding that plaintiff's disability was caused by disease occurring and originating subsequent to the issuance of the policies.

In arguing that plaintiff failed to make due proof of disability defendant says that "it was conclusively established that plaintiff submitted exhibit A to the defendant as part of his proof of disability;" that if plaintiff failed to furnish that exhibit he did not make the proof required of him by the defendant. We have hereinbefore discussed the question as to whether or not plaintiff furnished that exhibit and therefore deem further discussion unnecessary.

The evidence shows that plaintiff sent to the Mayo Clinic a blank form for proof of claim which had been sent to him by the defendant. The clinic did not return the form to plaintiff, nor, so far as the evidence shows, answer any of the questions propounded therein.

There was no way in which plaintiff could compel the clinic to answer the questions in the form, and it should not be held the failure of the clinic to fill in the blank should defeat this action, provided plaintiff furnished proof which was sufficient to show to a reasonable person that he had a cause of action on the policies. In July, 1936, plaintiff filled in a blank form furnished to him by the defendant in which he stated that he had been totally disabled since July 27, 1935, through frozen feet and hernia. Later in July, 1936, he filled in a blank form sent to him by the defendant, answered every question therein, obtained three blank forms to be filled in by doctors who had treated him. The questions in the forms were answered by the doctors. The answers stated in substance that plaintiff was totally and permanently disabled due to strangulated hernia and diabetes mellitus in

July, 1935. One of the doctors in answer to the question, "What past history was given you," said, "diabetes for several yrs." This statement the jury could find was contradicted by plaintiff. In October, after defendant received the proof, it caused plaintiff to be examined by its physican who, as its witness, testified he found plaintiff "to be suffering from arterio-sclerosis, diabetes, and beginning dry gangrene in the toes of the left foot;" that he had no way of knowing "just how long" plaintiff had had diabetes; that in his opinion diabetes was the cause of plaintiff's condition.

Defendant has not complained of the failure of the Mayo Clinic to fill in the blank form sent to it by plaintiff. Considering the facts we conclude the evidence was sufficient to allow the jury to find that the plaintiff complied with the "due proof" provision of the contracts.

Plaintiff's instruction No. 1 told the jury that if it found that plaintiff became totally and permanently disabled as the result of disease occurring and originating after the issuance of said policies. . . . The defendant contends the quoted clause of the instruction permitted the jury to speculate as to any disease that it might think caused plaintiff's disability. The only disease, if we eliminate gangrene as a disease, which caused plaintiff's disability, as shown by the evidence of both parties, was diabetes.

In such circumstances the jury would understand the word "disease" meant diabetes. [Knaup v. Western Coal & Mining Co., 114 S. W. (2d) 969.] The point is ruled against defendant.

The defendant assigns error to the action of the court in refusing its requested Instructions G and H.

Instruction G. would have told the jury that if it found the defendant requested plaintiff to furnish a "report from the Mayo Clinic, as part of the plaintiff's proofs, and, if you further find that the plaintiff did not deliver" Exhibit A. to the defendant, and if you find that the plaintiff thereby did not furnish due proof, then the verdict must be for the defendant. There was no evidence the defendant requested plaintiff to furnish a *report* from the Mayo Clinic. The request was for the clinic to answer questions prepared by the defendant and stated in a blank form sent by plaintiff to the clinic. The instruction would have submitted a question of law, namely, whether or not the failure to deliver the exhibit to the defendant was a failure to furnish due proof. The court properly refused the instruction.

Instruction H. said that if plaintiff delivered Exhibit A. to the defendant then it is conclusively established that plaintiff had diabetes prior to the issuance of the policies. The material and important statement in the letter that plaintiff was administered 45 units of insulin daily was shown by plaintiff's evidence to be untrue. The jury would have understood the instruction meant that plaintiff's

evidence was not true and should be disregarded, and for that reason the instruction was erroneous.

The defendant argues that the verdict, evidently for only one month's disability, was not responsive to the issue and "shows a disregard for the court's instruction." Under the evidence and instruction the plaintiff, if he were entitled to recover at all, was entitled to recover for seven months' disability, hence the allowance of one month's benefit was not warranted by either evidence or instructions.

In the case of Cole v. Armour, 154 Mo. 333, 55 S. W. 476, the plaintiff was entitled to recover $12,229.34 or nothing. The jury returned a verdict in his favor for $6000. On the defendant's appeal the court reversed the judgment rendered on the verdict for the reason the verdict was not responsive to the issue nor to any testimony in the case.

Is the present defendant in position to urge the verdict was not responsive to the issues? The verdict was received and judgment rendered thereon on the same day. No objection was made either as to the form or substance of the verdict until after it was received and the jury discharged. The verdict was not void on its face nor on the face of the record. The infirmity therein appeared when the evidence and instructions were examined. The failure of the verdict to call upon defendant to pay as much as it owed was an error to which the defendant made no objection nor saved exception as it should have done if it desired to convict the trial court of error in receiving the verdict. [Dixon v. Atkinson, 86 Mo. App. 24, 30.] If the defendant had called the attention of the trial judge to any infirmity in the verdict at the time the verdict was returned, as it had right to do (Jordon v. St. Joseph Ry., Light, Heat & Power Co., 73 S. W. (2d) 205), he could have returned the jury to its room to further consider the verdict. [Keyes v. Chicago, B. & Q. R. Co., 31 S. W. (2d) 50.] It must be remembered this appeal is legally a charge that the circuit judge committed error prejudicial to the defendant. Manifestly, it would be unfair to convict such judge of an error on account of a ruling to which the defendant did not object at the time.

The charge in the petition that plaintiff lost his left leg was evidently inserted after the suit was brought because that loss was sustained subsequent to the commencement of the action. Neither the loss of the left leg nor the injury caused by freezing was submitted in the instructions. Error prejudicial to the defendant is not shown.

The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.