**Frank THORNE, Jr., Respondent,**

v.

**Virgil Dean THORNE and Willis E. Baker, doing business as Baker Truck Lines, Appellants.**

**No. 48752.**

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1961.

Robert L. Jackson, Kansas City, for appellants.

John J. Gardner, Olathe, Kan., Thomas A. Sweeny, Kansas City, for respondent, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

EAGER, Presiding Judge.

The present suit is one for personal injuries. The trial court entered judgment in favor of plaintiff and against both defendants for $31,750 "for personal injuries" and $1,000 "as property damage," upon the purported verdict of a jury. The legal sufficiency of that verdict is the principal question raised here. A very brief statement of the facts will suffice.

Plaintiff, accompanied by a passenger, was driving his Ford pickup truck west along the north half of Guinotte Avenue in Kansas City at about 4:45 on the afternoon of April 9, 1959; he had slowed almost to a stop, or perhaps had stopped, in order to make a left turn into the driveway of a filling station on the south side of the street; he was in the inside lane of the north half of the four-lane street, waiting for the oncoming traffic to clear. He testified that his left turn signal was operating and had been so operating for nearly half a block, and that his stop was gradual. Defendant Thorne, driving a tractor trailer unit with a sixteen-ton load behind plaintiff and in the same direction, ran into the rear of plaintiff's vehicle and knocked it across the center line of the street into a head-on collision with an oncoming car. It is conceded that the defendant Thorne was acting as an agent for the other defendant. The identity of the surnames of plaintiff and the individual defendant is purely coincidental. Defendants were charged with negligence in sundry respects, including negligent lookout, negligent speed and a negligent failure to stop, slow or swerve so as to avoid the collision. Defendants do not claim here that plaintiff failed to make a submissible case. Contributory negligence was an issue at the trial, but that question is in no way involved here.

Plaintiff suffered very severe injuries, consisting principally of fractures of the

upper jaw, facial bones on both sides and across the nose, with a fracture line running into the base of the skull. The operative treatment was extensive and caused much discomfort and personal inconvenience. Plaintiff, at trial, testified to certain remaining serious effects, but his general recovery was regarded as good. We shall not need to develop this phase further.

The jury was instructed very fully on the issues of negligence pro and con, and on the matter of damages. No objections are made here to any of the instructions. The jury was also given an instruction (No. 11) containing several forms of verdict; all of those in plaintiff's favor began with the words: "We, the jury find the issues for plaintiff * * *"; and they concluded with the words: "and do assess his damages at $———." The forms so given distinguished between damages for personal injuries and property loss and permitted separate assessments for either or both. This instruction further told the jury that its verdict "should be written on a separate paper, and not on one of these instructions." After deliberating, the jury returned to the court a sheet of paper containing the following words and figures: "Persnal injuris $31,750.00 Damages $1000.00." Below this writing appeared the signatures of ten jurors. When the court received this paper it read the quoted words and figures aloud, asking the foreman whether the first amount was $31,150; the foreman replied that it was "*seven* hundred." At that point the following further colloquy ensued: "The Court: '— $750.00. Damages $1,000.00.' Do you mean by 'damages' property damage? The Foreman: Yes. The Court: I am going to write in here in the presence of the jury 'property damage', then have counsel look at it. This is signed by ten jurors, is that correct, Mr. Foreman? The Foreman: Yes, sir. The Court: Now, is that the verdict of the ten who signed this verdict? (Jurors indicate affirmatively.)" The court wrote the word "property" on this paper, before the word "damages." Following the above the

transcript notes—"Jury Excused." There is nothing in the record to indicate that counsel for either party had seen the paper up to this point.

Thereupon a colloquy ensued between court and counsel, and at that point counsel for defendants moved that the purported verdict be stricken and a mistrial declared, for the reasons: that on its face it was improper, that the jury had not followed the court's instructions, that it had not "found the issues" for plaintiff and against the defendants, that it had made no finding with regard to the negligence of the defendants' or plaintiff's contributory negligence, that the paper "is an estimate generally of some sort" and that it did not constitute a verdict of the jury. As a matter of clarity, we note here that these objections were fairly preserved in defendants' motion for a new trial, about which no question is raised.

At this point the court stated to counsel that the foreman had signed his name on the first verdict form on Instruction No. 11. That particular form contained separate specific findings of the issues for plaintiff on his claims for personal injuries and property damages, with blank spaces for the assessment of an amount as damages on each. No signature appears on the typed Instruction as contained in our record nor is there any other reproduction of the form in the record, but, of course, we take the court's statement to be true. There ensued some further colloquy, the court indicating that it felt that it was clear that the "verdict" amounted to a finding for plaintiff on both "personal and property damage," and that "the Court could have corrected the form of the verdict here in the presence of counsel and the jury or could have sent the jury back to the jury room to rewrite the verdict." At the conclusion of this presentation the court overruled defendants' motion to strike and for a mistrial. No effort was made to call the jury back or to correct the "verdict" further; and judgment was entered as already indicated. At the hearing on defendants' after-

trial motion for judgment or, in the alternative, for a new trial, plaintiff's counsel presented as exhibits affidavits from all the jurors. In substance, these merely recited that all twelve jurors had decided and "found the issues for the plaintiff," but that only ten could agree on the amounts stated. The after-trial motion was overruled and this appeal duly taken.

We have been cited to no case involving a situation like this one, nor have we found any in our own research. We note first, therefore, the principles generally held applicable where defective verdicts have been presented. A verdict is the sole basis of the judgment to be entered in a jury case and if it is not sufficient to sustain the judgment, the latter is void. Spangler-Bowers v. Benton, 229 Mo.App. 919, 83 S.W.2d 170, 175; Newdiger v. Kansas City, Mo.App., 106 S.W.2d 51, 52, aff. 342 Mo. 252, 114 S.W.2d 1047; Singleton v. Kansas City Baseball & Exhibition Co., 172 Mo.App. 299, 157 S.W. 964; Proctor v. Garman, 203 Mo.App. 106, 218 S.W. 910. The verdict must be responsive to all the material issues, and it should find the issues for or against the respective parties. Lummi Bay Packing Co. v. Kryder, Mo. App., 263 S.W. 543; Albrecht v. Piper, Mo. App., 164 S.W.2d 105; Singleton, supra; Proctor, supra; Newdiger, supra. Mere surplusage in a verdict has often been disregarded. Kimberlin v. Roberts, 341 Mo. 267, 107 S.W.2d 24, 27; State ex rel. St. Louis Public Service Co. v. Becker, 334 Mo. 115, 66 S.W.2d 141, 144; McMonigal v. North Kansas City Development Co., 233 Mo.App. 1040, 129 S.W.2d 75. It has been stated that the courts will construe a verdict liberally in an effort to ascertain the jury's intent. 53 Am.Jur., Trial, § 1052, p. 716. And, of course, the court considers a verdict to see if it can find a reasonably clear intent expressed therein, though perhaps inartfully expressed. State v. Russell, Mo., 265 S.W.2d 379, 44 A.L.R.2d 617; Shuff v. Kansas City, 221 Mo.App. 505, 282 S.W. 128; 89 C.J.S. Trial § 496, pp. 157–158.

Section 510.230 RSMo 1959, V.A. M.R. and Rule 71.02 of this court, V.A.M.R. provide that in "every issue for the recovery of money only, * * * the jury shall render a general verdict." Essentially, a general verdict is a finding or pronouncement by the jury on all the issues submitted to it, including, of course, the issue of damages, if appropriate. Will v. Hughes et al., 172 Kan. 45, 238 P.2d 478, 484; Gilmore v. Mulvihill et al., 109 Mont. 601, 98 P.2d 335. And see Home Trust Co. v. Josephson, Banc, 339 Mo. 170, 95 S.W.2d 1148, 1155, 105 A.L.R. 1063. After the reception of a verdict and the discharge of the jury, the court may correct or amend it in mere matters of form, but never in matters of substance. McIlvain v. Kavorinos, 358 Mo. 1153, 219 S.W.2d 349; State ex rel. St. Louis Public Service Co. v. Becker, 334 Mo. 115, 66 S.W.2d 141, 144; Powell v. Bierman, Mo.App., 22 S.W.2d 854; Boudreau v. Myers et al., Mo.App., 54 S.W.2d 998. And the court may always require the jury to retire again to correct its verdict or to find a new one, in case of defects or insufficiency. Singleton v. Kansas City Baseball & Exhibition Co., 172 Mo. App. 299, 157 S.W. 964; Blackman v. Botsch, Mo.App., 281 S.W.2d 532; Lindstrom v. Kansas City Southern Ry. Co., 202 Mo.App. 399, 218 S.W. 936, 937; Turley v. National Ammonia Co., Mo.App., 299 S.W. 53. It has also been held that the trial court could properly require the jury to correct its verdict in open court. Buttron v. Bridell, 228 Mo. 622, 129 S.W. 12; Christopher v. White, 42 Mo.App. 428. Indeed, verdicts have been corrected or inconsistent verdicts clarified by the recall of juries after they have actually been discharged. Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 31 S.W.2d 50; Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666.

In numerous cases affidavits of jurors, when offered in support of the verdict, have been considered in order to explain an ambiguity or to clarify the

verdict. Jordan v. St. Joseph Ry., Light, Heat & Power Co., 335 Mo. 319, 73 S.W.2d 205, 210; Stith v. J. J. Newberry Co., 336 Mo. 467, 79 S.W.2d 447; Hays v. Hogan, 273 Mo. 1, 200 S.W. 286, LRA 1918C 715, Ann.Cas.1918E 1127. In many such cases, as in those just cited, the affidavits were offered to explain ambiguities in the amount of the verdict. But a verdict cannot be made, created or obtained by affidavits or otherwise, when there was none initially. Lummi Bay Packing Co. v. Kryder, Mo. App., 263 S.W. 543. Kaimann v. Kaimann Bros., Mo.App., 182 S.W.2d 458, 462. Certainly, the verdict of a jury must be reasonably clear and definite, and it must contain at least the substance of the legal requirements. See, generally: Singleton, supra; Kaimann, supra; Lummi Bay Packing Co. v. Kryder, supra.

■ We have determined that here there was no verdict, and that the court erred in entering judgment. The court should have called the deficiency to the attention of the jury and required it to follow the instructions and the verdict forms. It failed to do so. In Singleton, supra (157 S.W. at loc. cit. 966) the court said: "It is such an easy matter to call the jury's attention to the ambiguity in the verdict at the time it is returned, and have it corrected and made absolutely definite and certain before the jury is discharged, that no room ought to be given for the rule that an uncertain or ambiguous verdict can be received and recorded, and then helped out by judicial construction when judgment is to be rendered upon it. As said in Newton v. St. Louis Railroad, [168 Mo.App. 199,] 153 S.W. 495: 'The only proper and safe way to correct such an ambiguity in the verdict is for the trial court at the time of its rendition to call the attention of the jury to the defect and have the correction made in the verdict before it is received and recorded.' " Instead the court here merely cleared up an ambiguity in the "persnal injuris" figure and, with the apparent consent of the jury, inserted the word "property" before the word "damages." At no time was the jury re-

quired to perform the essential act of finding the issues for one party and against the other in such form and manner that a proper verdict could be received and recorded. By entering judgment on the purported and insufficient verdict the court has, in fact, interpolated a finding where the jury made none, and it has thus supplied a matter of substance rather than form.

■ It is urged here that the plaintiff's verdict form (as contained in original Instruction No. 11) signed by the foreman, should supply any deficiency. It is true that it has been held, at least once, that a valid verdict may consist of two separate pieces of paper. U. S. Water & Steam Supply Co. v. Jacobia, 156 Mo.App. 597, 137 S.W. 906. But granting that, the verdict form signed by the foreman only could not be effective for any purpose; his signature would be effective only in the event of a unanimous verdict and everyone here concedes that this jury was not unanimous. Such a paper cannot aid effectively in *creating* a verdict here. And, since the paper thus referred to is not shown to have been received and recorded as a verdict, or as any part thereof (and does not appear here), it could not logically be considered by us as part of a verdict in any event.

■ As corrected, the supposed verdict contained the statement "Property Damages $1000." In plaintiff's amended petition he alleged that his property damage was $1200; in his deposition, as referred to at the trial, he had apparently estimated the damage at that figure. At the trial, however, he testified that he was then asking only $700 on that item and that he had *reduced* the claim to that figure. The jury wholly disregarded this testimony. It is true that in some cases, as counsel argue, a jury may decide as between conflicting testimony in a party's deposition and at trial, Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14; and that an owner may ordinarily testify to the reasonable value of his car, State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68.

What we have here, however, is not a jury's evaluation of divergent bits of testimony, or of opinion evidence, but its total disregard of an express waiver by plaintiff of a part of his original claim. We do not consider this as an independent ground for invalidating the total verdict; standing alone, it could have been corrected by remittitur. But we note the fact as a further illustration of the failure of this jury to follow the instructions and the trial proceedings, and of the insubstantial nature of the jury's consideration, generally.

 Finally, plaintiff urges that defendants' counsel waived the insufficiency of the purported verdict by not protesting at the time it was read and before the jury was discharged. They cite Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666, but apparently only to show that defendant might have asked, even after the jury was discharged, that it be recalled. Also mentioned is Cable v. Metropolitan Life Ins. Co., 233 Mo.App. 1093, 128 S.W. 2d 1123, which is distinguishable on its facts, the verdict there merely being for a lesser amount than defendant claimed it was liable for, if anything. Here the court purported to read the verdict; naturally it could read only amounts and the words "persnal injuris" and "damages," for that is all there was, except signatures. The court then asked regarding the larger figure (a "7" or a "1"), inserted the word "property," and asked if that was the verdict of the jury. He then, immediately as we understand, excused the jury. Primarily it was the duty of the court to require the jury to correct such a verdict as this. There is a fair inference that counsel on both sides supposed that the court was merely reading the figures and the words "personal injuries" and "damages" from a verdict otherwise in the usual form. We are not convinced that counsel had any sufficient opportunity to realize the real invalidity in the verdict until after the jury was excused. This impression was largely confirmed in the oral argument. We also note that the court did not show or tender the verdict to counsel until after the jury was excused. Substantially as soon as counsel for defendants saw the verdict, he moved to strike it and for a mistrial. He had a perfect right to take that action and his motion would have been wholly inconsistent with a request that the jury be returned to reconsider its verdict. If such action was to be taken at that point, either the court or plaintiff's counsel should have initiated it, and apparently the jury was still subject to call in the building, though excused. We have no doubt that counsel may and do, in some cases, waive informalities and defects in a verdict which do not render it void on its face, but we are wholly unwilling to hold that counsel may, by inaction, create a verdict where none exists.

For the reasons stated, we find that the verdict was wholly insufficient and that the court committed error in entering judgment upon it. In view of the foregoing it is unnecessary to consider the further point made of alleged prejudicial errors occurring during the final arguments.

The judgment is reversed and the cause remanded for retrial.

All concur.