**MFA COOPERATIVE ASSOCIATION OF ASH GROVE, Missouri, Plaintiff-Appellant,**

v.

**Willie ELLIOTT, Defendant-Respondent,**
and
**Thelma Elliott, his wife, Defendant.**

No. 9111.

Missouri Court of Appeals,
Springfield District.

March 29, 1972.

O. J. Taylor, Neale, Newman, Bradshaw, & Freeman, Springfield, for plaintiff-appellant.

Robert Stemmons, Mt. Vernon, for defendant-respondent.

HOGAN, Judge.

Plaintiff instituted this action in an effort to recover an unpaid balance of $6,540.-18 for goods (mostly feed) sold and delivered to defendants. Defendants answered by pleading (1) a general denial; (2) partial breach of warranty, by way of recoupment; and (3) a three count affirmative counterclaim, the substance of which was that plaintiff had furnished defendants with impure and unwholesome cattle feed which had caused defendants' cattle to develop scours, from which several died and several more lost weight and diminished in value. Defendants prayed damages in the sum of $15,000 on their counterclaim.

On trial, the case was developed in considerable detail, but an extensive recitation of the facts is unnecessary for our purposes. Plaintiff's evidence was that defendant Willie Elliott began buying feed and other

supplies on a running open account in 1961. Mr. Elliott had "paid up fairly regularly in '61 and '62 and then in 1963, early in the year," he began to get behind. Plaintiff introduced copies of purchase tickets, 307 in all, showing Mr. Elliott's purchases and payments from January 3, 1963, to August 6, 1968. According to Mr. Stark, plaintiff's manager, the whole balance due to the date of trial was $6,540.-18, which with interest at the rate of six per cent amounted to a total of $8,178.72. Mr. Stark testified that the charges made for the feed purchased were fair and reasonable. It was shown on Mr. Stark's cross-examination that defendant Thelma Elliott had been charged with only one purchase—a hair dryer—during the whole period involved, and that her name did not appear on the plaintiff's records, although she did charge certain items to her husband's account from time to time. Plaintiff's position was that defendants' plea in recoupment and their joint assertion of a counterclaim precluded them from denying joint liability, but there was no direct evidence indicating what items—other than the hair dryer—had been ordered or purchased by Mrs. Elliott, nor was there any direct proof that she had received any benefit from her husband's livestock operation. Mrs. Elliott's testimony was that she worked in Springfield, and when she was asked " . . . do you have much of anything to do with the livestock operation out on your farm [at Ash Grove]," she answered, "I have nothing to do with it."

It was also brought out on Mr. Stark's cross-examination that plaintiff had received a complaint about some feed from Mr. Elliott and that Mr. Stark and a "field man" from MFA had gone to the Elliott farm on July 15, 1968, to investigate the complaint. They examined the feed, found that some of it was stale, and advised Mr. Elliott to mix it with some fresh feed. According to Mr. Stark, the feed was "musty smelling" but not moldy. There was other evidence from the plaintiff's witnesses concerning the composition of the feed, the process by which it was manufactured, and the nature of Mr. Elliott's complaint, but again it is unnecessary to state that evidence in detail.

The gist and substance of the defendants' evidence was that in July 1968, Mr. Elliott was dealing in registered cattle and had some registered heifers on his farm near Ash Grove. The heifers weighed about 800 pounds apiece. Mr. Elliott was considering a "production sale" because the heifers were fat and in excellent condition. Finding that he was out of feed, Mr. Elliott ordered feed from the plaintiff, which was delivered on a Friday. This feed had a distinct odor, noticeable several feet from the barn to which it was delivered. Mr. Elliott was obliged to use the malodorous feed "that night" (Friday) because "the other stores were closed and it was that or they had to do without." The next morning he again fed his heifers the same feed, and "[f]ive o'clock Sunday morning they had the scours." Later, when Mr. Elliott examined the feed, "it showed sign of a mold which in similar comparison would be that that forms on light bread. I mean it would be—well, I don't know how to describe it, hairy or fuzzy or wooly, if you like to use that word." When the feed was broken up, "[y]ou would notice a little protrusion that would seem to be [growing] from [the] lump as you would break it apart." As noted, the cattle which ate this feed developed scours and "[that] lasted until five of 'em died . . . [and] it was the last of November or the first of December before they began any improvement in the others." Mr. Elliott complained to the plaintiff and asked Mr. Stark to have some of the impure feed analyzed. Stark refused, stating that an analysis was unnecessary because "he [Stark] could tell by smellin' it that there wasn't nothing wrong with the feed outside of it was fermented." Stark suggested that the fermented feed be mixed with other, fresh feed, which was delivered. Thereafter, Mr. Elliott purchased no feed from the plaintiff.

On the basis of his 32 years' experience in the cattle business and study undertaken since November 1968, Mr. Elliott was allowed to testify, over plaintiff's strenuous objection, that the feed he received on July 15, 1968, was impure and unwholesome and had caused five of his heifers to die and nine more to lose weight and value. He was also allowed to testify that before they became ill the heifers were worth $1,000 each. The cattle which became ill but recovered had an average value of $168.00. Mr. Elliott had, therefore, by his own testimony, suffered a loss of $12,488.-00, not including the cost of treating the cattle which became ill but did not die. This, in brief resumé, was the evidence presented.

At the close of the plaintiff's case, defendant Thelma Elliott moved "to dismiss" the plaintiff's claim as to her on the ground that no account had been proven against her. Plaintiff again argued that defendants' joint answer and joint assertion of a counterclaim amounted to a judicial admission that both were liable for the whole account. The trial court, treating the motion as a motion for directed verdict and stating that it was "not sure about the matter," denied the motion. At the close of the defendants' case, the plaintiff moved in writing for a directed verdict in favor of the plaintiff on its claim and in favor of plaintiff on the defendants' counterclaim. This motion was also denied. Some rebuttal testimony was heard, and both parties renewed their motions for directed verdict at the close of all the evidence, defendants supplementing their earlier motion by moving for a directed verdict on their affirmative counterclaim. Both motions were again denied, and the cause was submitted on plaintiff's claim and defendants' counterclaim. The jury was instructed on and given forms of verdict for use on both the claim and the counterclaim. After some deliberation, the jury returned the following verdict:

"We, the undersigned jurors, find the issues in favor of the defendants and against the Plaintiff on defendants' counterclaim, and we assess the defendants damages at $12,100.00, with the stipulation that the defendants pay their account with Farmers Exchange of Ash Grove, Missouri, thru [sic] July 15, 1968 including interest."

This verdict was signed by nine members of the jury and was ordered received and filed by the court.

Thereafter, and within the time specified for filing aftertrial motions, plaintiff filed a motion for judgment in accordance with its motion for directed verdict on its claim, and for a directed verdict for plaintiff and against defendants on the counterclaim, combining those motions with a motion for new trial as permitted by Rule 72.02.[1] The trial court denied the motion for new trial and denied the motion for a directed verdict on defendants' counterclaim, but entered judgment for the plaintiff against both defendants in the sum of $6,429.35 together with interest in the sum of $1,769.-23. The judgment further provided that defendants have and recover the sum of $12,100.00 from plaintiff, both judgments to bear interest from the date of rendition of the jury's verdict. Plaintiff has appealed; defendants have not.

■ A number of points have been made and argued in this court, but no mention or complaint has been made of the form of the verdict nor of the procedure by which the final judgment was entered. The case is most unusual; in the course of a reasonably diligent research, we have found no other case procedurally comparable. While we cordially agree with the general rule that the only points for consideration on any appeal are those properly briefed in accordance with Rule 83.05, Pruellage v. De Seaton Corporation, Mo., 380 S.W.2d 403, 405 [3]; Ambrose v.

---

1. All references to statutes and rules are to R.S.Mo. (1969), V.A.M.S. and V.A.M.R., unless otherwise specifically noted.

M. F. A. Co-Operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647, 648–649 [1], it is nevertheless basic and fundamental that an appeal lies only from a final judgment disposing of all parties and all issues in the case. Deeds v. Foster, Mo., 235 S.W.2d 262, 265 [4]. Except to the extent that entry of a judgment by the court may be authorized by Rule 72.02 when no verdict was returned by the jury, the verdict is the sole basis of the judgment to be entered in a jury case, and if it is not sufficient to sustain the judgment, the latter is void. Thorne v. Thorne, Mo., 350 S.W. 2d 754, 757 [1]; Spangler-Bowers v. Benton, 229 Mo.App. 919, 927, 83 S.W.2d 170, 175. Under the provisions of Rule 83.13(c), plain errors affecting substantial rights may be considered on appeal though not preserved for review. Pettus v. City of St. Louis, 362 Mo. 603, 613, 242 S.W.2d 723, 728–729 [5]. Having given the matter careful consideration, we have concluded that we must notice as plain error the want of any jury finding sufficient to sustain a valid final judgment. We cannot, in our view, base an opinion upon the merits of a void judgment.

■ In the first place, we believe the verdict would necessarily be incomplete even assuming the condition attached to the jury's finding could properly be disregarded as surplusage. The general rule is that the verdict must be responsive to all the material issues submitted and should find the issues for or against the respective parties. Thorne v. Thorne, supra, 350 S.W.2d at 757 [2]; Lummi Bay Packing Co. v. Kryder, Mo.App., 263 S.W. 543, 545 [1]. In some instances, for example Ragsdale v. Young, Mo.App., 215 S.W.2d 514, a finding on the counterclaim necessarily disposes of the claim, but that is not true here. As pointed out in Albers Milling Company v. Carney, Mo., 341 S.W.2d 117, 121 [2] [3], a breach of warranty or partial breach of warranty in a case of this kind may be pleaded either in recoupment or as an affirmative counterclaim. Defendants here set up their claimed breach of warranty both by way of recoupment and as an affirmative counterclaim, but in either case a finding for the defendants would not necessarily be inconsistent with recovery of part of the amount claimed by the plaintiff, particularly since the account sued on represented the sale of many items and extended over a period of several years. See Albers Milling Company v. Carney, Mo.App., 371 S.W.2d 355, 360 [1]; Heuer v. Ulmer, Mo.App., 281 S.W.2d 320, 324 [4, 5]; 46 Am.Jur. Sales, § 723, p. 847. In our view, whether defendants' claimed breach of warranty had been submitted merely to diminish the plaintiff's claim by way of recoupment or as an affirmative counterclaim, a finding on both the claim and the plea in recoupment or counterclaim would be required. Specifically, however, the lack of any finding on plaintiff's claim is significant here because the defendants submitted their claimed breach of warranty as an affirmative counterclaim and the recovery on the counterclaim exceeded the amount claimed by the plaintiff. In such case, a single judgment for the defendants asserting the counterclaim should be entered, Edmonds v. Stratton, Mo.App., 457 S.W.2d 228, 232; 20 Am. Jur.2d Counterclaim, Recoupment and Set-off, § 157, p. 364, but since the jury made no finding of the amount due plaintiff, the trial court was left without any means of determining the amount of the judgment to be entered.

■ We are well aware that Rule 72.02 permits a party who has moved for a directed verdict at the close of all the evidence to move for judgment in accordance with his motion for directed verdict after trial, and in terms permits the entry of a judgment in accordance with the motion for directed verdict if no verdict was returned. In this case, plaintiff sought to cure the lack of a finding on the claim by utilizing Rule 72.02. The comparable Federal Rule, Fed.R.Civ.P. 50(b), apparently permits the entry of a judgment by the court for either party, plaintiff or defendant, if the jury fails to agree and does not

return a verdict, see O'Brien v. Thall, 2 Cir., 283 F.2d 741, 742; Daniels v. Pacific-Atlantic S. S. Co., D.C.N.Y., 120 F.Supp. 96–97 [1]; Wright and Miller, Federal Practice and Procedure, § 2535, pp. 590–593 (1971), although it has been said that under Fed.R.Civ.P. 50 a verdict should be entered for a party having the burden of proof only where there is insufficient evidence to permit any other finding. Mihalchak v. American Dredging Company, 3 Cir., 266 F.2d 875, 877 [2, 3]. Nevertheless, whatever may be the extent of a trial court's power to enter judgment for a party having the burden of proof upon motion for judgment after trial under our Rule 72.02, we do not believe there was a basis for entry of the judgment here entered for the plaintiff on its claim. This is not a case in which the correctness of the account and the reasonableness of the charges were substantially admitted, as was true in M.F.A. Central Cooperative v. Harrill, Mo. App., 405 S.W.2d 525, 527 [3]; the defendants specifically denied any indebtedness to the plaintiff, and neither their joint alternative plea in recoupment nor their joint assertion of an affirmative counterclaim constituted a judicial admission of joint liability. Macheca v. Fowler, Mo., 412 S.W.2d 462, 465 [1, 2]; Johnson v. Flex-O-Lite Manufacturing Corporation, Mo., 314 S.W.2d 75, 79 [4]; 29 Am.Jur.2d Evidence, § 692, p. 747; 31A C.J.S. Evidence § 302, p. 776. In this case the defendants were entitled to have a jury determine the correctness of the account and the reasonableness of the plaintiff's charges, even though they adduced no substantial countervailing evidence, J. D. Streett & Co. v. Bone, Mo., 334 S.W.2d 5, 8–9 [1, 2] [3, 4] [5], and the post trial entry of a judgment on plaintiff's claim was improper.

■ Even setting such considerations aside, we believe we would be obliged to hold that there is no final appealable judgment in this case because, in our opinion, the verdict returned is insufficient to support the entry of any judgment. It is true that a jury's verdict should be liberally construed, and a court should consider it carefully to see if it can find a reasonably clear intent therein expressed, though perhaps inartfully. Thorne v. Thorne, supra, 350 S.W.2d at 757. Nevertheless, as that case holds, the verdict must be responsive to all the issues and must find all issues for or against the respective parties. The verdict rendered in this case is merely a conditional verdict; it purports to award damages to the defendants upon the condition that they perform some additional act, namely, that they "pay their account with Farmers Exchange of Ash Grove, Missouri." A conditional verdict does not amount to a finding or pronouncement by the jury as required by § 510.230 and Rule 71.02. The verdict should not have been received. Cox v. Bright, 65 Mo.App. 417, 421–422; Davis v. Searcy, 79 Miss. 292, 30 So. 823, 824; 89 C.J.S. Trial § 485(e), p. 141. Even in those jurisdictions which purport to accept conditional verdicts, it is held that a verdict conditioning an award of damages upon the performance of some other act should not be received. Smullin v. Harenski, 106 Pa.Super. 453, 162 A. 319, 320 [2].

■ For the reasons noted, the cause is reversed and remanded for a new trial on all issues. We realize that the defendants have not appealed, but when it is essential to do justice, or when a retrial of the issues necessarily affects non-appealing parties, we may remand a case for retrial even as to the non-appealing parties. Rule 83.13(c); Hardwick v. Kansas City Gas Co., 355 Mo. 100, 104–105, 195 S.W.2d 504, 506; Albers Milling Company v. Carney, supra, 371 S.W.2d at 360 [3]. The judgment is therefore reversed and remanded for a new trial on both the claim and the counterclaim.

TITUS, C. J., and STONE, J., concur.